THE INTERNATIONAL BANK, *Appellant*, v. THE GERMAN BANK.

71  188
97   59
71  183
54a 409
71  188
57a 120
71  183
62a 633
71  188
167 400

1.   **Effect of Blank Indorsement of Non-negotiable Certificate of Deposit.** A blank indorsement of a non-negotiable certificate of deposit by the payee thereof, accompanied by delivery, will enable the holder to make a valid pledge of the certificate to an innocent party, without reference to the equities between himself and the payee. The pledgee is authorized to infer absolute ownership and full right in the holder to pledge; but as against the true owner his recovery will be limited to the amount of his loan.

2.   ————. The certificate in question in this case had, written across its face, the following words: "This certificate is subject to any subsequent claim for collection or any other fees arising out of the disbursement of the legacy of which this money is part of proceeds." The bank which issued the certificate not asserting any rights under this stipulation, *Held*, that as between the other parties, it did not affect the operation of the foregoing rule.

*Appeal from St. Louis Court of Appeals.*

REVERSED.

*F. & E. L. Gottschalk* for appellant.

*T. A. & H. M. Post* for respondent Boecke.

1.   To be estopped, Boecke must have intended to influence the conduct of the party invoking the estoppel.

*Dezel v. Odell*; *Devereux v. Burgwyn*, 5 Ired. Eq. 355; *Welland Canal Co. v. Hathaway*, 8 Wend. 483; *Howard v. Hudson*, 2 El. & Bl. 1; *Plumer v. Lord*, 9 Allen 458; *Audenried v. Betteley*, 5 Allen 385; *Pickard v. Sears*, 6 Ad. & El. 474; *Copeland v. Copeland*, 28 Me. 539; *Califf v. Hillhouse*, 3 Minn. 315; *Reynolds v. Lounsbury*, 6 Hill 536; Big. Estop. 380; *Turner v. Coffin*, 12 Allen 401; *Biddle v. Merc. Min. Co.*, 14 Cal. 368; *Combs v. Cooper*, 5 Minn. 254; *McAfferty v. Conover*, 7 Ohio St. 99.

2.   He must have been guilty of such conduct as would make it fraudulent and against good conscience to assert his right.   *Welland Canal Co. v. Hathaway, supra*; *Devereux v. Burgwyn, supra; State v. Potter*, 63 Mo. 225; *Burleson v. Burleson*, 28 Texas 415; *Biddle v. Merc. Min. Co., supra;* 1 Story Eq., § 391; *Bragg v. Bost. & Wor. R. R.*, 9 Allen 62; *Danforth v. Adams*, 29 Conn. 111.   There is a total failure of proof or pretense of proof of either fact.   There can be, therefore, no estoppel in the case.

3.   Boecke's blank indorsement cannot, of itself, work an estoppel.   That gave the People's Savings Institution no *indicia* of title.   (*a*) His indorsement was the common mode of transfer adopted for any purpose for collection or otherwise.   It was no guaranty of title.   (*b*) It pretended to give no other title to plaintiffs than the law merchant would clothe the holder of non-negotiable paper with, viz: a title subject to the equities of Boecke.   Plaintiff cannot claim that it was misled by the indorsement, when its error was caused by its own ignorance of the statute affecting commercial paper.   (*c*) As a matter of law plaintiff cannot claim an estoppel created by the indorsement itself.   *Mech. Bk. v. R. R.*, 13 N. Y. 638; Big. Estop. 481; *Clark v. Sisson*, 22 N. Y. 312.

NAPTON, J.—The facts of this case are undisputed, and are fully stated in the printed brief of appellant, conceded to be correct by the counsel for respondent, and are, therefore, for convenience here copied:

It appears that the International Bank, plaintiff, as well as the German Bank, defendant, and the People's Savings Institution, of which John H. Fisse became the assignee, are all banking corporations; that on August 11th, 1874, Hermann Boecke, one of the interpleaders, deposited with the German Bank the sum of $3,000, for which he received a certificate of deposit, as follows:

$3,000.                         GERMAN BANK,          }
              ST. LOUIS, Mo., August 11th, 1874.     }

Hermann Boecke has deposited in this bank $3,000, payable to the order of himself, six months after date, with six per cent interest for the time stated, on the return of this certificate properly indorsed.

No. 10,301.              FRANK N. DEITZ, Cashier.

The following indorsement is written across the face in red ink: "This certificate is subject to any subsequent claim for collection, or any other fees arising out of disbursement of the legacy of which this money is part of proceeds."

It further appears that afterward and before the maturity of said certificate, to-wit: on August 24th, 1874, the same was indorsed in blank by said Hermann Boecke and delivered to the People's Savings Institution for safe keeping and as collateral security for two loans made by said institution to said Boecke, for which he had executed and delivered his two promissory notes, one for $300 and one for $150; that no part of either of said notes have been paid, and that both of them are held by John H Fisse, as such assignee of said People's Savings Institution. It further appears that afterward, and still before the maturity of said certificate of deposit, to-wit: in January, 1875, Edmund Wuerpel, then cashier of the People's Savings Institution, did, for and on behalf of said institution, obtain a loan of $5,000 from the plaintiff, the International Bank, to secure which loan he delivered to plaintiff sundry collaterals, amounting in the aggregate to $6,000, among which was this certificate of deposit, not yet due; that Wuerpel

acted within the scope of his authority in making the loan, and that he represented to plaintiff at the time that the collaterals so offered were the property of the People's Savings Institution; that Wuerpel, as such cashier, executed a note for said $5,000, which became due on February 1st, 1875, a Monday, and that these collaterals were pinned to such note; that on January 30th, 1875, the Saturday before the Monday on which said note became due, in the afternoon, Wuerpel came to the teller of plaintiff, and said he wished to pay the loan of $5,000, and then gave his check, certified by him as cashier, on the People's Savings Institution, of which he was cashier, for $4,500, being the balance due on said loan, and in exchange the teller gave him the note with the collaterals attached; that next Monday, February 1st, 1875, in the morning, the teller of plaintiff was sent down to the People's Savings Institution but found the doors closed and that Wuerpel had absconded; that thereupon the plaintiff sued out a writ of replevin against said People's Savings Institution and against Fisse, its assignee, and by virtue of such writ obtained back said certificate of deposit; that said replevin suit was still pending, undecided, at the time of the trial of this case, (although since decided in favor of plaintiffs;) that Wuerpel, the cashier, absconded on January 31st, 1875, (Sunday;) that upon discovering this an assignment was made by the People's Savings Institution of its property and effects to John H. Fisse, on Monday, February 1st, 1875, and that he took possession thereof on that day, and found that Wuerpel, prior to his departure, had given his checks to various parties, to the amount of many thousand dollars in excess of the money on hand.

It was further shown that the International Bank, plaintiff, took said certificate in good faith, as one of the collaterals, and upon the representation of Wuerpel, that it was the property of the People's Savings Institution; that plaintiff had collected of the other collaterals only the sum of $2,040.26; that plaintiff had presented to said

assignee, Fisse, said certified check of $4,500, for allowance, and that the same had been allowed, that said assignee had subsequently declared a dividend of two and one-half per cent, but that plaintiff had collected no part thereof. These are the facts and evidence.

The pleadings are: A petition filed by plaintiff, March 11th, 1875, against the German Bank, upon the certificate of deposit above set out, which petition is in the usual form. The answer of the German Bank admits the issue of said certificate, but sets out, that Hermann Boecke and said assignee, Fisse, both, also demand the amount due on said certificate; alleges its readiness to pay over the money or to bring it into court, and asks that said parties may be ordered to become parties to this suit and to interplead. Thereupon plaintiff moved to strike out from said answer all allegations showing that any other party made a claim to this certificate, which motion was overruled. Hermann Boecke filed also a petition in this case on April 20th, 1875, praying that he be permitted to interplead. This petition was granted and such leave given. Thereupon Boecke filed his interplea on May 15th, 1875. October 27th, 1875, John H. Fisse, assignee of the People's Savings Institution, by leave of court, also filed his interplea, claiming that defendant, the German Bank, should first pay the two notes made by Boecke. On January 5th, 1876, plaintiff filed a reply to the interplea of Boecke. On January 6th, 1876, the German Bank moved, and it was accordingly ordered, that it pay into the court the sum of $3,050, that it pay $40 to its attorneys, and that it be discharged.

On January 15th, 1876, the case went to trial before Judge John Wickham, under the pleadings and facts above stated. The plaintiff prayed for three instructions, all of which the court refused to give.

These instructions are as follows: 1. The court declares the law of this case to be, that, if the People's Savings Institution, by Edmund Wuerpel, its cashier, on the 30th day of January, fraudulently or by fraudulent repre-

sentation obtained possession of the certificate of deposit, and the plaintiff afterward replevied said certificate out of the hands of the People's Savings Institution, then the People's Savings Institution acquired no right to, or interest in said certificate by reason of such possession, nor did plaintiff lose any right or interest therein, but he is entitled to the same rights that he would have had, if the certificate had remained in his possession continuously up to the time of bringing this suit.

2.    The court declares the law of this case to be as follows:    It being admitted by all the parties, that the certificate of deposit on which suit is brought was indorsed in blank by Boecke, the payee, and by him delivered before maturity to the People's Savings Institution, the effect of such indorsement and delivery was equivalent to an acknowledgment on the part of Boecke, that he had parted with the ownership of said certificate, and he is estopped from setting up any claim to, or interest in the same, as against the rights of the plaintiff, provided plaintiff took the certificate from the People's Savings Institution as collateral for a loan, before maturity, without any notice of Boecke's ownership or claim, but upon the representation of Wuerpel, the cashier, that the People's Savings Institution was the true and lawful owner of the certificate.

3.    If the court, sitting as a jury, believe from the evidence that the certificate of deposit, on which this suit is brought, was indorsed by Hermann Boecke, the payee, before its maturity, and that said certificate, after such indorsement and before maturity, was assigned to plaintiff as collateral security for a loan obtained upon the faith and credit of that and other securities, that plaintiff took said certificate in good faith, without any notice of any defect in the title thereof, or of any equities existing against the payment of the same, and if the court further believe from the evidence that the said loan has not been wholly paid, then the court will find for the plaintiff.

Thereupon the interpleader, Boecke, prayed for the

following instructions, which the court gave: 1. The court declares the law to be, that if the plaintiff took a check for the amount of the note for which the certificate of deposit in controversy was given as a collateral, and voluntarily surrendered up the note and certificate, then plaintiff has no claim upon Boecke's equity of redemption to said certificate of deposit, even although the money was never paid on said check.

2. The court declares the law to be, that the instrument sued on in this case is not a negotiable instrument, and that, therefore, it is subject in the hands of plaintiff to all the defenses which would exist against the People's Savings Institution, and plaintiff could acquire no other or greater title or claim to said instrument than the said People's Savings Institution had therein when transferred by it to the plaintiff.

3. The court declares the law to be that the certificate of deposit in controversy is not a negotiable promissory note, and plaintiff, the International Bank, must, therefore, show that it paid value for said certificate, even though it obtained said certificate before maturity.

The court thereupon rendered judgment that, out of the fund deposited by the German Bank, the two notes made by Boecke to the People's Savings Institution should be paid to John H. Fisse, and the balance to H. Boecke, and nothing to plaintiff. Plaintiff appealed to the court of appeals, which reversed the judgment below and rendered a judgment substantially the same as that of the circuit court, so far as Boecke was concerned, but adjudged the $450 borrowed of the People's Savings Institution to the plaintiff, and the case comes to this court by appeal from this last judgment.

The principles upon which a determination of this case depends are well established and recognized by this court in prior adjudications, and rest on solid foundations of justice and equity; but the application of these principles, which all recognize to be right, has occasioned considera-

ble diversity of opinion, partly on account of the facts peculiar to each case, and partly owing to statutory regulations peculiar to the State where the questions arose. I am not aware of any case like the present having ever come before this court, and, although we have been referred to cases in California, New York, Ohio, Pennsylvania and Massachusetts, they are mostly in reference to mining stocks and bank stocks, and their mode of transfer regulated by State laws. We have examined all of these cases that are accessible, and endeavored to ascertain from them how far the transfer of the certificate of deposit in this case ought, upon the principles agreed on, to be governed by these decisions.

I propose to discard from consideration any investigation into the question largely discussed by the counsel on either side, and apparently entering largely into the consideration of the circuit court, which originally decided the case, and of the court of appeals where it was last disposed of, whether the certificate of deposit by Boecke was a negotiable instrument or not. That it was transferable by delivery and indorsement is not disputed. " The term ' negotiable,' " as was observed by Judge Scott in *Odell v. Gray*, 15 Mo. 342, " in its enlarged signification, applies to any written security which may be transferred by indorsement or delivery, so as to vest in the indorsee the legal title, so as to enable him to maintain a suit thereon in his own name. In this sense of the term, a bond under the statute concerning bonds and notes may be said to be negotiable, and in this sense is the term understood when applied to paper in cases similar to that now under consideration. In this State, where there exist both bonds and promissory notes which are negotiable, but yet have none of the properties of a bill of exchange, but their being suable upon in the name of the indorsee, and notes with all of the characteristics of a bill of exchange, the term ' assignable ' is usually applied to the former and ' negotiable ' to the latter class of those instruments."

We shall assume, therefore, that the certificate of deposit was a non-negotiable instrument in the restricted sense of the term "negotiable," referred to by Judge Scott. It was assignable, however, and was assigned by an indorsement in blank of Herman Boecke. What was the object and effect of this blank indorsement? It is said the object was safe keeping, and as collateral security for the loan of $450 borrowed of the bank. So far as safe keeping is concerned, one would think that it could be as safely kept without his name on the back as with it. As collateral security, it could only be of use as an authority to write over the name of the indorser that of the indorsee, or that of any one else to whom he might sell or pledge it, with a view to collect the certificate, or to raise money on its transfer.

In New York, it seems that certificates of stock in a bank are usually made transferable only on the books of the bank by the owner of the stock, or his attorney, yet the supreme court of that State held, in *Kortright v. Buffalo Commercial Bank*, that a certificate of stock is transferable by a blank indorsement, which may be filled up by the holder, by writing an assignment and power of attorney over the signature indorsed. The court observes : "The execution in blank must have been for the express purpose of enabling the holder, whoever he might be, to fill it up. If intended to be filled up in the name of the first transferee, there would have been no necessity for its execution in blank. The filling up is but the execution of an authority clearly conveyed to the holder, is lawful in itself and convenient to all parties, as it avoids the necessity of needlessly multiplying transfers on the books." 20 Wend. 93. This case was taken to the court of errors, (22 Wend. 360,) where the judgment of the supreme court was affirmed, with the dissent of the chancellor and two or three senators. So far as the point we are now considering is concerned, the opinion of the court is chiefly aimed to show that a sealed transfer in blank of bank stock, which

seems to be admitted requisite, by reason, I presume, of the terms of the bank charter or some by-law on the subject, would authorize the transferee to write a full assignment and a power of attorney over the signature thus made under seal.    It is unnecessary to insert the reasoning of the court or its conclusions on this point, since it will not be and has not been pretended that any seal is necessary to an assignment of a bank certificate of deposit, or any power of attorney in this State or elsewhere.    If an assignment in blank, under seal, in cases where a seal is requisite, will still authorize the holder to write over it the necessary power of attorney, it surely must follow *a fortiori* that such assignments, or indorsements, without seal, where none is required and where no power of attorney is required, will have equal efficacy in transferring the legal title to the indorsee, assignee or holder.

This question was again discussed in *McNeil v. The Tenth National Bank*, 46 N. Y. 329, before the court of appeals, composed of seven judges, in which all the judges who expressed any opinion concurred.    In that case, the judge delivering the opinion of the court observes: "The true point of inquiry in this case is, whether the plaintiff did confer upon his brokers such an apparent title to, or power of disposition over, the shares in question as will thus estop him from asserting his own title, as against parties who took *bona fide* through the brokers."    This, it will be perceived, is also a case of a transfer of bank stock, but what is said has a bearing on the present case, and we therefore copy it: "It is said in some English cases that blank assignments of shares in corporations are irregular and invalid, but that opinion is expressed in cases where the shares could only be transferred by deed under seal, duly attested, and is placed upon the ground that a deed cannot be executed in blank.    Without referring to the American doctrine on that subject, it is sufficient to say that no such formality was requisite in this case.    It was only necessary to a valid transfer, as between the parties,

that the assignment and power should be in writing. The common practice of passing the title to stock by delivery of the certificate with blank assignment and power has been repeatedly shown and sanctioned in cases which have come before our courts, 　 * · 　 * 　 and in the case of *Kortright v. Commercial Bank of Buffalo*, 20 Wend. 91, and 22 Wend. 348, the same usage was established as existing in New York and other States, and it was expressly held that, even in the absence of such usage, a blank transfer on the back of the certificate to which the holder has affixed his name is a good assignment, and that a party to whom it is delivered is authorized to fill it up by writing a transfer and power of attorney over the signature. It has also been held, by repeated adjudications, that, as between the parties, the delivery of the certificate, with assignment and power indorsed, passes the entire title, legal and equitable, in the shares, notwithstanding that, by the terms of the charter or by-laws of the corporation, the stock is declared to be transferable only on its books; that such provisions are intended solely for the protection of the corporation, and can be waived or asserted at its pleasure, and that no effect is given to them, except for the protection of the corporation; that they do not incapacitate the shareholder from parting with his interest, and that his assignment not on the books passes the entire legal title to the stock, subject only to such liens or claims as the corporation may have upon it, and excepting the right of voting at elections, etc."

The case of *Moore v. Metropolitan Bank*, 55 N. Y. 41, was not a case of bank stock, but of a certificate of indebtedness of the State of New York, issued by the capitol commissioners, and this certificate was not assigned in blank, and therefore the case has no application to the question now under consideration. It, however, reviewed and reaffirmed the decisions heretofore cited, all the court, (seven judges) concurring, except Allen, J., who dissented, and it was decided, (there being no question about an assign-

ment in blank) that a *bona fide* purchaser for value of a non-negotiable chose in action from one, upon whom the owner has, by assignment, conferred the apparent absolute ownership, where the purchase is made upon the faith of such apparent ownership, obtains a valid title as against the real owner, who is estopped from asserting a title in hostility thereto. Had the assignment been in blank, it would have been precisely the same question with the one presented by the case before us, and we will therefore take occasion to refer to it again, when we pass to the main point in this case.

The same principle is asserted in *Weirick v. Mahoning Co. Bank*, 16 Ohio St. 296. This was the case of a deposit in one bank to the credit of another bank. The depositor, without the knowledge of the last bank, took a letter from the bank · where the money was deposited to the bank to whose credit it was placed, advising it of the deposit, and afterward delivered the letter to a third person named Wolfe, with his own name indorsed in blank thereon, for presentation to the bank to whose credit the deposit was made. The bearer of the letter wrote the following order over the signature of the depositor: "Pay the within to T. M. Wolfe," and it was held that the bearer of the letter had authority to control the fund and to write the above order over the signature in blank, and that a payment to Wolfe was authorized. The court observed that "it is well settled that if one intrusts his name in blank to another to procure a discount, he is liable to the full extent to which such other may see fit to bind him when the paper is taken in good faith, without notice that the authority given is exceeded. The authority conferred by such blank signatures is said to be that of a general letter of credit. It is no defense against a *bona fide* holder to prove that the person to whom the paper was intrusted was only authorized to use it for a particular purpose, and had fraudulently converted it to a different purpose, or that he was only authorized to fill the blank upon a certain condition which

had not happened." It will be observed that this was an application of the principles which govern in negotiable paper, not merely to a blank assignment of a non-negotiable certificate, but to a mere letter written by the bank in which the deposit was made, addressed to the bank where the note of the depositor was due, and indorsed to a friend as a matter of convenience, in order that the depositor might get credit for the amount, but the court held " that the indorsement in blank having been made, and with the voucher delivered to Wolfe, the bank, in the absence of any just ground to suspect the *bona fides* of Wolfe, had a right to presume him invested with full authority over the fund, and might safely pay him the money or apply it as he might direct."

The case of *Combes v. Chandler*, decided in the Ohio supreme court in 1878, is not accessible, the volume containing the decision in .October of that year not being in the State library, but the report of its substance in the Albany Law Journal (Vol. 18 p. 358) is doubtless, correct. This report represents the decision as follows : " A *bona fide* purchaser for value of a non-negotiable chose in action from one upon whom the owner has by assignment conferred the apparent absolute ownership, when the purchase is made upon the faith of such apparent ownership, obtains a valid title against the real owner, who is estopped from claiming title thereto." (See 33 Ohio St. 178.—RE-PORTER.)

In California there have been three cases decisive of the question under consideration, the last one made in 1879. This was the case of *Winter v. Belmont Mining Company*, 53 Cal. 428. In this case it was held that where the owner of certain mining stocks caused them to be transferred on the books of the corporation to another, who was there called "trustee," and the certificate was issued to such trustee, and such trustee indorsed the certificate in blank and delivered it to a third person, from whom it was stolen and put on the market by the thief, the purchaser in good

faith and for value acquired a valid title to the stock as against the owner. In this case the person who committed the theft happened to be the "trustee," but I presume the party to whom it had been delivered with a blank indorsement would have been equally competent to pass the title. It had been previously held that the addition of the word "trustee" to the name in which the stock was registered and a blank assignment in such name, did not show that the person so styling himself had not full power to deal with it as his own, and gave no notice to the party buying the certificate that any other person had an interest in it; on the contrary, though indicating that he had a *cestui que trust*, yet the reasonable presumption was that as the legal holder he had the right to dispose of it. *Thompson v. Toland*, 48 Cal. 99. In this case the court remarked that the owner had permitted the certificates to remain in the hands of the person in whose name they had been registered, and indorsed in such manner as to pass by delivery, and with nothing on their face to indicate that he had any interest in them, or that they were not the property of the registered owner whom he clothed with all the usual *indicia* of the ownership of mining stock. "He had," observes the court, "placed them in a position to deal with the stocks as though they were the absolute owners. &#42; &#42; He clothed them with such an apparent ownership as to mislead the public. &#42; &#42; Under such circumstances the party who places another in a position to practice the fraud should suffer the loss, rather than an innocent person who deals with him on the faith of the usual *indicia* of ownership with which the true owner has invested him."

We deem these authorities sufficient to show that the blank indorsement of Boecke upon the certificate of deposit and the delivery to the cashier of the People's Savings Institution with this indorsement, was such a transfer of the title as to authorize those dealing with the latter to infer an absolute ownership in the People's Savings Institution,

and a full authority on their part to sell or pledge the certificate.

It is said, however, that the writing in red ink on the back of this certificate was sufficient to put a party purchasing on inquiry, thereby distinguishing it from an ordinary non-negotiable promissory note. We are unable to perceive any importance to be attached to this writing. It could only be regarded as an idle and superfluous declaration on the part of the bank of rights of lien, which the law gave them without any declaration, and it seems no such fees as are specified, accrued. It did not concern the interpleaders and did not affect the question between them. It was placed on the certificate for the protection of the bank where the deposit was made. This bank placed in court the whole amount of the deposit and was discharged.

The question then between the interpleaders resolves itself into the propriety of the doctrine that where one of two innocent persons must sustain a loss, occasioned by the fraud of a third, it must fall upon the one who puts it in the power of the third person to commit the fraud. This doctrine has been repeatedly recognized by this court, and no citation of authorities is thought necessary. But it is said that when applied to the transfer of non-negotiable paper, it conflicts with the equally well established doctrine that in regard to every security, other than negotiable paper, the vendor or pledgeor can convey no greater or better title than he has himself. No better answer to this objection can be made than was by the judge who delivered the opinion of the court of appeals, in New York, in the case of *McNeil v. Tenth National Bank.* " This doctrine " says the learned judge in that case, " is a truism, predicable of a simple transfer from one party to another, where no other element intervenes. It does not interfere with the well-established principle, that where the true owner holds out another, or allows him to appear as the owner of, or as having full power of disposition over the

property, and innocent third parties are thus led into dealing with such apparent owner, they will be protected. Their rights in such cases do not depend upon the actual title or authority of the party with whom they deal directly, but are derived from the act of the real owner, which precludes him from disputing, as against them, the existence of the title or power which, through negligence or mistaken confidence, he caused or allowed to appear to be vested in the party making the conveyance." 46 N. Y. 329; 15 East. 38; 10 Adolph. & Ellis 90; 20 Wend. 268, 284; 8 Cowen, 238; 13 Wend. 570.

It is further objected that this doctrine, when applied to non-negotiable paper, in effect puts it on the same footing with negotiable instruments. To this it may also be replied in the language of Judge Grover, of the court of appeals of New York, in *Moore v. The Metropolitan Bank*, 55 N. Y. 48, that it has no such effect. "No one pretends," says Judge Grover, "but that the purchaser of non-negotiable choses in action will take them subject to all defenses, valid as to the original parties, nor that the mere possession is any more evidence of title in the possessor than is that of a horse. In both respects the difference between them and negotiable instruments is vital, and not at all affected by the application of the same rule as to chattels." The learned judge then proceeds to examine the New York cases, and after overruling that of *Bush v. Lathrop*, 22 N. Y. 535, on this point, and reiterating the doctrines in *McNeil v. The Tenth National Bank*, to which we have already referred, concludes, that "the bank, if it made the loan to Miller in good faith, upon the credit of the certificate, acquired a title thereto, valid against the plaintiff to the extent of the loan." That being our conclusion in regard to the claim of the International Bank of St. Louis, the judgment of the court of appeals is reversed, and the case is remanded to the circuit court to enter judgment in conformity with this opinion. All concur.