Lee v. Turner.

Lee *et al.* v. Turner, *Respondent*, and Roemheld, *Appellant.*

1. **Negotiable Notes**: OVERDUE AND NON-NEGOTIABLE NOTES: APPARENT OWNER, TRANSFER BY. If the true owner of a negotiable note, overdue, or of a non-negotiable note, clothes another with the usual evidence of ownership, or with full power of disposition, and third persons are thereby led into dealing with such apparent owner and receive a transfer of the same, they will be protected therein.

2. ——: ——: ——. The act of the real owner precludes him from disputing against such third persons the existence of the title, or power he caused, or allowed to be vested in the apparent owner.

*Appeal from St. Louis Court of Appeals.*

AFFIRMED.

*Louis Gottschalk* for appellant.

(1) The money must be awarded to Roemheld, because he is the holder of the principal note of nine thousand dollars. His title to the note has never been assailed in any action, and this is a condition precedent for the interference of a court of equity. Before a court

of equity will deprive a holder of a note of his right to
receive the money collected at the instance of a third
party, who claims to be its owner, he must first establish
his ownership, in a direct action.   *Curtis v. Kent*, 4 Mo.
App. 121 ; *Dodd v. Levy*, 10 D. 121 ; *Donnell v. Mitch-
ell*, 15 Otto, 431 ; *Grand Chute v. Wineger*, 15 Wall. 373.
(2) Roemheld acquired the note in good faith, and for
a valuable consideration, from Million, to whom Turner
had transferred all the insignia of ownership, by deliv-
ery and indorsement.   The allowance -in the probate
court in favor of Million, also tended to show that the
latter was the owner.   (3) There is no question but that
Roemheld acted in the utmost good faith, using more
precaution than was necessary.   Where two or more in-
nocent persons must sustain a loss occasioned by the
fraud of a third, it must fall upon the one who puts
it in the power of the third person  to commit the
fraud.   *Inter. Bk. v. Bk.*, 71 Mo. 183 ; *Moore v. Bk.*, 55
Mo. 48 ; *Wood's Appeal*, 92 Pa. St. 379 ; *Combes v.
Chandler*, 33 Ohio St. 178.   (4) Turner's contract with
Million was champertous, and  the law will assist
neither party to recover from the other.   *Duke v. Har-
per*, 61 Mo. 51 ; *Million v. Ohnsorg*, 10 Mo. App. 432.

*Alexander Martin* also for appellant.

(1)   The rule is not doubted that, negotiable paper,
when assigned after maturity, passes to the assignee,
subject to equity, whether open or latent, known or un-
known.   1 Daniel Neg. Inst. [3 Ed,] sec. 724*a*.   But the
equities thus following the paper according to the law
merchant are only such as exist between the parties to the
original paper or negotiation.   The rule does not apply
to equities arising subsequently between intermediate
indorsers, as in this case.   *Hill v. Shield*, 81 N. C. 250 ;
*Parker v. Stillings*, Phillips [N. C.] 590 ; *National Bk.
v. Texas*, 20 Wall. 89 ; *Melery v. Lilburn*, 2 John. Ch.

443 ; *Hibernia Bk. v. Everman,* 52 Miss. 500 ; *Crosby v. Turner,* 40 Iowa, 136 ; *Redfern v. Ferrier,* 1 Dan. 50 ; *Warren v. Haight,* 65 N. Y. 171 ; *Vinton v. Crow,* 4 Cal. 309 ; *Hayward v. Stearns,* 39 Cal. 58 ; *Renwick v. Williams,* 2 Md. 356 ; *Whitehead v. Walker,* 10 M. & W. 695 ; *Goldwaite v. National Bk.,* 67 Ala. 547 ; *Blair v. Methiot,* 46 Pa. 265 ; 1 Dan. Neg. Inst. [3 Ed.] sec. 726 *b.* (2) Roemheld, having taken this paper for value, from Million, the legal holder thereof, is not confronted with the equities to which it is subject, according to the law merchant—those in favor of the maker. He is confronted with the supposed equity of a remote indorser or assignor. His liability depends upon notice. The law merchant does not impose constructive notice of such equity. (3) He had no notice of this equity. (4) There are no facts from which notice can be inferred. (5) The unqualified assignment on the back of the note, and the circumstances under which Roemheld took the note, constitute an estoppel on the payee, Turner. (6) The trial court, upon these facts in evidence, found that Roemheld had no notice, and that Turner was estopped from asserting his secret trust. This finding on the facts should not be disturbed.

*T. T. Gantt* for respondent, Thomas T. Turner.

(1) The evidence shows Roemheld was not an innocent purchaser. He had reason to think that Mr. Turner was the owner of the note at the time of the mistaken credit, and even presumed that he was. Inquiry would have revealed that this was the fact, yet he made no such inquiry. This is sufficient to charge him with notice. *Major v. Birkley,* 51 Mo. 227. Notice to an agent is notice to his principal. *McDermott v. Railroad,* 73 Mo. 516 ; *Chouteau v. Allen,* 70 Mo. 290 ; *Hayward v. Ins. Co.,* 52 Mo. 181 ; Story on Agency, sec. 140 *et seq.* (2) Even if an innocent purchaser, Roemheld

had no better title than Million had. *Ford v. Phillips*, 83 Mo. 523. After maturity, a bill or note being dishonored, proclaims to all concerned that they must deal with it at their peril, and that in no case can they obtain a better title thereto than that with which the assignor is actually clothed. And there is no exception to this rule growing out of the other rule of law, that, when one of two innocent purchasers must suffer, the loss should fall on him who enabled the third party to commit the fraud. *Wheeler v. Barret*, 20 Mo. 573; *Emerson v. Crocker*, 5 N. H. 159; *McKim v. King*, 58 Md. 502; *Stein Bros. v. Bank*, 34 La. An. 1119; *Foley v. Smith*, 6 Wall. 492.

BLACK, J.—The petition in this case is in the nature of a bill of interpleader. The defendants, Thomas T. Turner, R. M. Million and Wm. Roemheld, each made claim to the fund brought into court. Their respective claims arise out of the following transactions :

On the twenty-second of February, 1876, one Rohn made to the plaintiffs, A. and J. F. Lee, a deed of trust on certain property in the city of St. Louis to secure a note made by Rohn for nine thousand dollars due in three years, payable to Turner as trustee for Mrs. Briggs, and to secure six interest notes. There was a default in the payment of the principal note and some of the interest notes, and on the tenth of March, 1879, the trustees sold the property, and Turner became the purchaser, at six thousand dollars. This sale paid the interest notes, and the trustees endorsed on the principal note a credit of the residue of the proceeds of the sale. Soon after this sale, and in April, 1879, Turner, as trustee, endorsed the note to Million without recourse. On the same day he took back a contract, reciting the assignment and amount due upon the note, by the terms of which Million was to endeavor to collect the balance from the estate of Rohn, who died previous to the date of the trustee's sale. Million agreed to pay all the costs of

litigation and for his services was to receive one-half of the amount collected, and at the end of eight years return the note, if not collected. Million had allowed in his own name the balance due on the note by the probate court against the estate of Rohn, and in like manner prosecuted suits to set aside deeds alleged to be fraudulent and to subject the property to the payment of this debt.

In 1881, Turner contracted to sell the property which he had purchased at the trustee's sale, when an investigation of the title disclosed the fact that the trustees had only advertised the property for sale for twenty days; the trust deed required thirty. Thereupon, Turner directed the trustees to re-advertise and sell the property again, which they proceeded to do. While the property was thus being re-advertised, Roemheld loaned Million three thousand dollars, to become due in one year, and as security took an assignment of the Rohn note, which was then in the possession of Million. The re-sale was temporarily enjoined, and in 1882 the trustees again sold the property at public sale for twelve thousand dollars, and this is the fund in dispute. The circuit court found and decreed that Roemheld was entitled to be paid three thousand dollars and the interest thereon, and that Turner should have the residue. This judgment was reversed in the court of appeals, and Roemheld prosecutes this appeal from that judgment.

As between Turner and Million there can be no difficulty. By the endorsement and agreement, both made at the same time, and, therefore, as between them, parts of the same transaction, Million had and could have no interest in the special security. He took the note upon the supposition and understanding that the security had been exhausted. Besides this, he held the note for the sole purpose of collecting the residue out of other property of the Rohn estate. It is true

the note was over due when transferred by Turner to Million and long past due when received by Roemheld. But we do not see that the doctrine that a transferee of negotiable paper, to whom it is transferred after maturity, acquires nothing but the actual right and title of the transferer, should control the disposition of this case. The note was assignable. If the true owner of a negotiable note over due, or of a non-negotiable note, clothes another with the usual evidences of ownership, or with full power of disposition, and third persons are led into dealing with such apparent owner, they will be protected in their dealings. As was said in *McNeil v. Tenth National Bank*, 46 N. Y. 329, and approved by this court in *The International Bank v. The German Bank*, 71 Mo. 197, " their rights in such cases do not depend upon the actual title or authority of the party with whom they deal directly, but are derived from the act of the real owner which precludes him from disputing, as against them, the existence of the title or power which, through negligence or mistaken confidence, he caused or allowed to be vested in the party making the conveyance."

Now does Roemheld occupy that relation as to Turner and to the note in question? It is urged, and if true, is a matter of considerable consequence, that he loaned the money to Million for one year and took as security this Rohn note when he knew the property securing it was at the same time advertised for sale. Uhlman, through whom the loan was made, testifies unequivocally that he did not know the property was then advertised, and it is shown beyond all doubt that Roemheld relied upon him and the attorney for advice, against whom there is no suspicion to be fairly drawn from anything in the record. Roemheld says he saw the property advertised in a newspaper and went to see Mr. Gottschalk, his attorney, but he had previously stated that he had not seen the attorney before the trans-

Lee v. Turner.

action was closed, and we find the opinion of the attorney as to the title addressed to Uhlman. It is not shown, therefore, that he knew this property was then advertised for sale ; the contrary is established. Roemheld found endorsed on the note the following statement, signed by the trustee : "March 10, 1879, credited by proceeds of trustee's sale this day $4,633.08." He had the records examined and the abstract showed the former trustee's sale to Turner. The attorney gave it as his opinion that the sale was void and that the note held by Million was secured by the deed of trust. Roemheld examined the property and regarded it as sufficient security. Now the above indorsement showed to him that the assignment only purported to convey the balance due upon the note, and, of course, subject to the right of the purchaser to have refunded the amount of the former sale. But as to the residue of the note he found a full and complete transfer thereof by Turner to Million without any restriction or qualification whatever. From the allowance of the note by the probate court, in the name of Million also endorsed thereon, Million appeared to have been the owner for nearly two years.

The transfer of the Rohn note carried with it the security, certainly so, as far as anything appearing upon the face of these transactions. It is true Roemheld did not inquire of either the trustee or Turner for further information ; but he appears to have been cautious in the transactions, and the evidence shows beyond all doubt that he made the loan relying upon the security. He had no knowledge of the agreement between Million and Turner, nor was there a thing indicating to him the existence of any such an arrangement. That agreement was not designed by the parties thereto to go with the note, for it was in terms a contradiction of the endorsement. The purpose of it was to give Million the outward appearance of the full ownership that he might prosecute suits in his own name. Turner has been

deceived by the confidence which he placed in Million, but it is the result of his own act, and as between himself and Roemheld, who took the note in good faith, he ought to bear the consequences.

The judgment from which this appeal is taken is reversed, to the end that that of the circuit court shall stand affirmed. All concur.