Gage v. Averill.

W. A. GAGE, Appellant, v. F. M. AVERILL *et al.*,
Respondents.

St. Louis Court of Appeals, March 5, 1894.

1. **Practice, Trial**: ORDER OF PROOF. Since the order of proof is to a great extent within the discretion of the trial court, the admission in the course of a trial of evidence, whose relevancy depends upon facts alleged but not yet proven, is not necessarily erroneous; but, when the relevancy of a transaction is dependent upon the existence of an agency or notice, the safer course is not to receive evidence of it until such agency or notice has been first established.

2. **Promissory Notes**: PRESUMPTION AS TO TIME OF INDORSEMENT. The indorsement of a promissory note is presumed to have been made at the time it bears date.

3. ———— : AFFECTING PURCHASER WITH EQUITIES. The purchaser in good faith and for value of a negotiable promissory note before maturity is not affected by the equities of parties, of which he has no notice at the time of his purchase.

*Appeal from the Pemiscot Circuit Court.*—HON. H. C. O'BRYAN, Judge.

REVERSED AND REMANDED.

*R. B. Oliver* for appellant.

(1) It was error for the trial court to refuse instruction number 5, which declared that the plaintiff was entitled to recover, if he purchased the notes in suit before maturity and in good faith and without any knowledge of the facts pleaded by way of defense in the answer of the defendants. *Mayes v. Robinson*, 93 Mo. 114, 122; *Hamilton v. Marks*, 63 Mo. 167; *Johnson v. McMurray*, 72 Mo. 278. A promissory note imports a consideration, and raises the presumption of its validity, and when offered in evidence estab-

lishes a *prima facie* case. *Hammett v. Barnum*, 30 Mo. App. 289; *Feurt v. Ambrose*, 34 Mo. App. 360. (2) The refusal of plaintiff's third instruction was error. That instruction declared that "the indorsement of the notes must be presumed to have been made at the time the indorsements are dated." This was refused, and in doing so the court committed error. *Horton v. Bayne*, 52 Mo. 531; *Smith v. Ferry*, 69 Mo. 142. Lawson on Presumptive Evidence, p. 78. (3) The admission of evidence of the agreements between the original parties to the notes was error. *Frissell · v. Mayer*, 13 Mo. App. 331.

No brief filed for respondent.

ROMBAUER, P. J.—This is a suit by the plaintiff, as indorsee of two negotiable promissory notes, against the defendants who are makers of the notes. The cause was tried by the court sitting as a jury, and the trial resulted in a judgment for the defendants. The plaintiff, appealing, assigns for error the ruling of the court on the evidence, and the refusal of his instructions.

The plaintiff's petition is founded upon the two notes which are signed by all the defendants, eighty-eight in number. The notes are in the usual form of such notes. Both bear date October 1, 1890, and are payable to the order of W. A. Joplin on or before December 1, 1889, and on or before February 1, 1890, respectively. Both notes bear the following indorsement: "For value received the within note is hereby transferred to W. A. Gage & Co." The plaintiff is a sole trader doing business under the firm name of W. A. Gage & Co.

The answer of the defendants, which is verified by oath, contains the following affirmative defenses.

The defendants were, at the time when these notes were signed, associates under the name of Farmers' and Laborers' Union Ginning Company, of Pemiscot county, Missouri, and W. A. Joplin was the owner of a cotton gin mill in said county. On October 1, 1889, the defendants by their agents entered into a contract with said Joplin to buy of him the gin mill for $4,000, and executed to him four promissory notes for $1,000 each, payable respectively December 1, 1889, February 1, 1890, December 1, 1890, and February 1, 1891. Cotemporaneously with the execution of said notes, they, as such agents, also entered into a written contract with Joplin, referring to such notes in terms, and stating that Joplin agreed to sell to them the gin mill in consideration of the four thousand dollars evidenced by such notes. This contract, among other things, recited that said parties of the second part (the defendants) "agree to pay said notes promptly as they become due, and insure the gin house and contents, said insurance to be for the benefit of the said party of the first part (W. A. Joplin) to the extent of his interest in said gin house and fixtures, and, in case of a failure of said parties of the second part to pay said notes as they become due and payable, said property is to revert back to the said party of the first part, and the said notes to be canceled."

The answer then states the following additional facts. Owing to the number of the makers of the notes, they were circulated and signed some time prior to October 1, 1889. Before the last mentioned date twelve of the signers became dissatisfied with the arrangement and desired to withdraw their names, and so notified the managing committee and Joplin. It was thereupon agreed between the managing committee and Joplin that four new notes should be executed,

omitting the names of the twelve dissatisfied makers. In pursuance thereof four new notes were to be executed of the same tenor as the originals, but Joplin was permitted to retain the four original notes as memoranda, in order to show them to the plaintiff who held a mortgage on the gin mill. The defendants soon after October 1, 1889, took possession of the gin mill under their inchoate arrangement, and continued in possession thereof until December 18, 1889, when, finding that they could not meet the payment of the first notes when they fell due, it was agreed between them and Joplin that the entire contract should be canceled upon their paying rent to Joplin for the use of the mill while in their possession. In pursuance of this arrangement Joplin took charge of the mill and continued in its possession. A complete settlement was thereafter had between the defendants and Joplin by arbitration on or about February 15, 1890.

The answer also states that the plaintiff had full knowledge of all these facts; wherefore defendants prayed for judgment and a cancellation of all the four notes.

The plaintiff replied that the four notes were assigned to him for value and before maturity; that he took the same in good faith and without notice or knowledge of the matters set up in the answer of the defendants. The replication also denies the truth of the new matter set up in the answer.

Upon the trial of the cause the defendants gave evidence of their dealings with Joplin tending to substantiate the claim that, owing to the withdrawal of some of the original signers, new notes were to be executed. There was no evidence, however, that such new notes were fully executed or delivered to Joplin. The testimony disclosed the fact that, shortly after October 1, Joplin with an accredited agent of the

defendants repaired to Memphis, Tennessee, where the plaintiff was engaged in business; that they called upon the plaintiff, who held a mortgage lien upon the gin mill, to ascertain on what terms he would release his lien. There is some evidence that upon that interview Joplin exhibited to the plaintiff the four notes, and vouched for the solvency of the signers; also that he exhibited his contract with the defendants. Whether anything was said on that occasion about any new notes which were to be given, does not clearly appear. It is conceded that shortly after this interview the plaintiff addressed the following note to the managing officer of the defendants:

"MEMPHIS, TENN., Oct. 3, 1889.

"*J. T. Walker, Esq., Caruthersville, Mo., President County Wheel.*

"DEAR SIR: The lien we hold on the gin of W. A. Joplin will be transferred to you as fast as payments are made. We would suggest that you have it insured, loss payable to us as our interest may appear. We can sell you some good second hand bagging, etc.

"W. A. GAGE & CO."

It is also conceded that, while in Memphis, the defendants' accredited agent called upon an insurance company, and made application for insurance on such gin mill; that an insurance policy on such application was issued in favor of the defendants, but was subsequently canceled by the company and the premium returned to the defendants. The mill continued in the possession of the defendants until December 21, 1889, at which time they claimed to have turned it over to Joplin. On December 30, 1889, the mill was destroyed by fire without any insurance thereon, so far as the evidence shows.

There was no evidence adduced by the defendants,

tending to show that the plaintiff was not a holder for value before maturity. Outside of the legal presumption in plaintiff's favor, the plaintiff gave uncontroverted evidence that he took the notes in good faith as commercial paper by delivery from Joplin shortly after their execution; that he paid Joplin $1,500 at the time, and advanced him altogether over $4,000 on the notes. He explained the fact of the later date of the formal written assignment by saying that it was made long after the notes came to the possession of his agent, and was made for the purpose of showing a regular legal title to the notes, in case that their enforcement by suit should become necessary. The plaintiff was corroborated in that statement both by his agent and Joplin. In regard to the arbitration set up in the answer of the defendants, the testimony of the defendants was very indefinite as to what was submitted to the arbitrators. Some of them were of the opinion that the entire controversy between Joplin and the defendants should be arbitrated, but the arbitrators themselves, as appears by their written award, took a different view of the matter. At all events, it would seem that Joplin took possession of the mill pending arbitration and ginned his own cotton, allowing the defendants $4 a bale for the cotton thus ginned. The following note was written by the committee of the defendants to Joplin under date of December 21: "The committee has just now agreed upon to close up the gin until this matter is settled. The gin is not to run or allowed to be run by anybody." On December 30, 1889, the arbitrators made their written award, finding "that, after balancing accounts between said parties, the Pemiscot County Farmers' and Laborers' Union Gin Co. owe the said W. A. Joplin the sum of $20; and we further agree that the Wilkes note and Bigham account, amounting to $263, has nothing to do

with this arbitration, and that the said Joplin is not liable therefor." Nothing is said about the notes or about the surrender of the mill; in fact it does not appear that any of the arbitrators ever considered the matter. As above stated, the mill was destroyed by fire on the day when this award was made.

While the witnesses for the defendants were being examined, the plaintiff objected to all evidence of matters transpiring between the committee and Joplin, either prior or subsequently to the assignment of the notes, as matter that could not bind him. These objections were overruled by the court, and the plaintiff excepted and still excepts. That matters transpiring anterior to the delivery of the notes could not bind the plaintiff, if he was an indorsee in good faith and for value before maturity is self evident. But the answer denied that the plaintiff was such a holder, and expressly averred that he had notice of these matters. As the *order* of proof is to a great extent within the discretion of the trial court, the admission of evidence which might or might not be relevant, according to whether it was or was not connected with other evidence subsequently, was not necessarily erroneous. If such connection failed, the plaintiff had a right to insist that the evidence be stricken out, but, whether stricken out or not, it would not prove the issue. As the case was tried by the court without the intervention of a jury, the court will be presumed to have rejected evidence which had no probative force, and, if it failed to do so, its action is subject to review on appeal.

The same may be said touching all evidence admitted against the plaintiff's objections, bearing upon what transpired between Joplin and the defendants subsequently to the assignment of the notes by Joplin to the plaintiff. That evidence could become relevant

only, if it were subsequently shown that Joplin acted therein as plaintiff's agent, of which there was no evidence; or, if it appeared that the plaintiff knew of the clause in the contract between Joplin and the defendants that the notes were subject to cancellation in certain contingencies, of which there was some slight evidence. We must, therefore conclude, on the whole, that the court did not commit prejudicial error against the plaintiffs by admitting the evidence complained of, although the safer course in these cases is to prove the notice or agency first, and then show the facts, notice of which to the plaintiff is material.

This brings us to the main and substantial complaint of plaintiff that the court erred in refusing his instructions, which he claims state correct propositions of law applicable to the facts. When the court tries a cause without the intervention of a jury, the only value of instructions is to determine the view of the law which the court applied to the facts. The instructions will, therefore, not be scrutinized as closely as in jury trials; but, where they state correct propositions of law and, are supported by the evidence, their refusal constitutes reversible error, because it becomes apparent that the court misunderstood or misapplied the law. *Cunningham v. Snow*, 82 Mo. 593. The court in this case gave no instructions at all, and refused all the instructions asked by the plaintiff. Among the instructions thus refused were the following:

"The court further declares that the indorsement on the back of the notes sued upon in this cause must be presumed to have been made at the time they are dated.

"Although the court, sitting as a jury, may find from the evidence that, at the time the defendants delivered to W. A. Joplin the notes in this suit, they did not intend to invest the said Joplin with the

ownership of said notes or the power to dispose of them; yet, if the court further finds that said notes were delivered to Joplin, and that he sold and transferred them to the plaintiff before maturity and for a valuable consideration, and that the plaintiff bought said notes in good faith and without any notice or knowledge of the circumstances attending said delivery, or the purpose for which they were delivered, then, in that event, the finding must be for the plaintiff.

"If the court, sitting as a jury, believes from the evidence that the defendants delivered to W. A. Joplin the notes sued upon, and that said Joplin sold and transferred said notes to the plaintiff before they matured, and that said plaintiff bought said notes in good faith and without any knowledge of the facts set up in defendant's answer, and that he paid a valuable consideration for them, then, in that event, the finding must be for the plaintiff.

"If the court, sitting as a jury, believes from the testimony that the plaintiff bought said notes from W. A. Joplin in good faith before they had matured, and paid a valuable consideration for them, and that the plaintiff believed said Joplin was the owner of said notes by reason of what said Joplin and these defendants and the agents of these defendants had said and done about said notes, then these defendants are estopped from questioning said sale and transfer of said notes, and the finding must be for the plaintiff."

There was no evidence in this case having any tendency to show that the indorsement of the notes were not made at the time when they bore date. There was ample evidence to support every other hypothesis stated in the instructions, and they stated correct propositions of law; hence the plaintiff was entitled to have them given. *Horton v. Bayne*, 52 Mo. 533; *Smith v. Ferry*, 69 Mo. 142; *Moore v. Bank of Com-*

*merce,* 52 Mo. 377; *Hamilton v. Marks,* 63 Mo. 167; *Lee v. Turner,* 89 Mo. 489; *Neuhoff v. O'Reilly,* 93 Mo. 164; *The International Bank v. German Bank,* 71 Mo. 183; *Bremen Bank v. Branch-Crookes Saw Co.,* 104 Mo. 425; *Fitzgerald v. Barker,* 96 Mo. 661; *Feurt v. Ambrose,* 34 Mo. App. 360.

The judgment is reversed and the cause remanded. All the judges concur.