HOWARD E. GINTER, APPELLANT, v. CLYDE V. MCBRIDE ET AL., RESPONDENTS.[*]

Kansas City Court of Appeals. December 17, 1928.

*Corpus Juris-Cyc References: Bills and Notes. 8CJ. section 109, p. 72, n. 47; section 118, p. 74, n. 97; section 522, p. 344, n. 2, 5; section 731, p. 519, n. 63.

*Randolph & Randolph, Roger Stone Miller* and *Scott J. Miller* for appellant.

*James E. Goodrich, H. G. Leedy* and *Hugh M. Miller* for respondent.

FRANK, C.—This is an action upon a promissory note in the sum of $1500, dated November 26, 1919, due December 1, 1921 and bearing six per cent annual interest. Respondents Clyde V. and Pearl McBride are sued as makers and the Commerce Trust Company as indorser of said note. At the close of the evidence, the trial court instructed the jury to return a verdict in favor of Commerce Trust Company, whereupon plaintiff dismissed as to defendants Clyde V. and Pearl McBride, and the jury returned a verdict as directed. After judgment on the verdict, plaintiff appealed.

The facts are as follows:

The note in suit was one of three notes executed by McBride and wife to Commerce Trust Company, and represented a real estate loan which the trust company had made to the McBrides on land owned by them, located near Kidder, in Caldwell county, Missouri. The three notes were dated November 26, 1919 and totaled $19,000. One of the notes was given for the principal sum of $16,000 and the other two for $1500 each. One of the $1500 notes matured December 1, 1920, the other December 1, 1921 and the $16,000 note matured December 1, 1926.

Within a short time after the execution of the $16,000 note, the Commerce Trust Company sold it to the Missouri State Life Insurance Company. The evidence of respondent shows that at the time of this sale there was placed on the back of the $1500 note in suit the following signed memorandum.

"Commerce Trust Company, for and in consideration of the sale of the note or bond for *$16,000* described in and secured by the same deed of trust by which this note is secured, hereby agrees, in case of foreclosure of said deed of trust, that the trustee shall, out of the proceeds of the foreclosure sale, pay the note or bond above mentioned in full before any part of the proceeds of such sale shall be applied towards the payment of this note.

"COMMERCE TRUST COMPANY,
"By *Townley Culbertson,* V. P."

Appellant's testimony was to the effect that the same **memorandum** was placed on the other $1500 note at the same time.

The $1500 note first maturing, was paid in full to the Commerce Trust Company on its due date, December 1, 1920. It appears **that** Roscoe L. Terry, cashier of the bank of Kidder, held a second deed of trust on the same land which secured by a first deed of trust the $1500 note in question, and the $16,000 note which had been sold by the Commerce Trust Company to the Missouri State Life Insurance Company. When the $1500 note matured on December 1, 1921, Terry, in order to protect his second mortgage, requested the Commerce Trust Company to extend the time of payment of the $1500 note until March 1, 1922. This request was granted on condition that the $1500 note and the interest due on the $16,000 note be paid at that time.

On March 8, 1922, Terry paid to the Commerce Trust Company slightly more than $2500, which represented the amount due on the $1500 note and the past due interest on the $16,000 note held by the Missouri State Life Insurance Company. Of the $2500 paid by Terry, an amount sufficient to pay the $1500 note was furnished to Terry by the Kidder bank. The note was delivered to Terry, uncancelled. Terry's evidence is to the effect that he purchased the note from the trust company for the Kidder bank, while that of the trust company tends to show that he did not purchase the note, but paid it.

On March 8, 1923 the Kidder bank, acting through Terry, its cashier, sold the $1500 note to plaintiff and received payment therefor out of his account in said bank. Plaintiff held the note until July 26, 1927, on which date he brought this suit. Prior to the institution of this suit, the Missouri State Life Insurance Company foreclosed the deed of trust securing the note for $16,000 which it held, and the $1500 note held by plaintiff. The proceeds of said sale were used towards the satisfaction of the $16,000 note.

Appellant's first contention is that he is entitled to recover against the trust company because said company by its act clothed Terry with the usual and apparent evidence of ownership, and plaintiff purchased for value and in good faith.

If the signed memorandum placed on the back of the note amounts to an indorsement, appellant's contention is well founded. Otherwise not, because delivery of the note to Terry without indorsement, would not clothe Terry with the usual and apparent evidences of ownership.

What are the facts? The Commerce Trust Company held three notes, dated November 26, 1919, one for $16,000 and two for $1500 each, and all secured by a first deed of trust. Shortly after the execu-

tion of these notes, the trust company sold the $16,000 note to the Missouri State Life Insurance Company, under an agreement with said insurance company, and as a part of the consideration of said sale, that in case of foreclosure of the deed of trust securing said notes, the $16,000 note should have priority of payment over the two $1500 notes. As evidence of this agreement a memorandum signed by the trust company, and reciting that in case of foreclosure of the deed of trust securing these notes, the $16,000 should have priority of payment over the other notes, was indorsed on the back of the two $1500 notes at the time the $16,000 note was sold to the insurance company.

This signed memorandum was placed on the note shortly after its execution in November, 1919, not for the purpose of transferring the $1500 note to anyone, but as evidence of the contract between the trust company and the insurance company relative to the sale of the $16,000 note to the insurance company. The trust company still owned and held the $1500 note with this signed memorandum indorsed on the back thereof. When it matured in December, 1921, Terry, in order to protect a second deed of trust he held on the same land which secured the $16,000 and the two $1500 notes, requested the trust company not to foreclose under its deed of trust securing the $1500. This request was finally granted and the time extended to March 1, 1922, on condition that the $1500 note and the interest on the $16,000 be paid at that time. On March 8, 1922, Terry paid the trust company $2500, which amount covered the $1500 note and the interest on the $16,000 note. At the time this payment was made, the $1500 note was delivered to Terry, uncancelled. Terry testified that at the time he took up the $1500 note, he asked the trust company not to cancel it; that he wanted the note to be good itself and requested that it be not cancelled because he wanted to hold it as a lien against the land.

There is nothing in the evidence that tends to show that the trust company intended to indorse the note, or that the officers of said company led Terry to believe that the signed memorandum on the note, amounted to an indorsement.

Terry was acting for the bank of Kidder at the time he took up the $1500 note, and this bank afterwards sold the note to plaintiff. The gist of the evidence is that Terry took up the $1500 note in order to prevent a foreclosure, and at his request, the note was not cancelled at the time it was taken up.

In the light of the facts thus presented, plaintiff must stand or fall on the proper construction of the signed memorandum appearing on the back of the note, unaided by other facts or circumstances.

The question presented is whether or not the signed memorandum on the back of the note amounts to an indorsement. The signature appended to the written memorandum standing alone, would amount to a blank indorsement, but when considered in connection with the written memorandum, such memorandum qualifies or explains the purpose of the signature, which, in this case, was a mere certification or acknowledgment of the contract made between the trust company and the insurance company relative to the priority of payment of the $16,000 note.

In Clark v. Whiting, 49 Conn. 149, the payee of a note had endorsed it in blank. Beneath the indorsement of the payee the following memorandum appeared,

"Received one year's interest on the within note May 10, 1871.

"G. K. WHITING."

In disposing of the contention that Whiting had indorsed the note, the court said,

"Does the note purport to have been indorsed by Whiting in the legal sense of that term? We think not. If the defendant had written the words, 'without recourse' over and in immediate connection with his signature before delivering the note, no one would claim that he had made a contract of indorsement. The reason is that his signature would be taken in connection with the words preceding it. These words would qualify or explain it. Suppose the defendant had written upon the back of the note a memorandum of some contract he had made with a third person, and the parties to the contract had signed the memorandum, could this make them liable as indorsers of the note if it should afterwards be further negotiated? Disconnect the signatures from the rest of the writing and they would be indorsements. So disconnect the signature from the words 'without recourse' in the case supposed, and the defendant would be liable as an indorser of the note; but if his signature is taken with the words, he would not be liable. We think it clear the entry in question itself purports merely the acknowledgment of a receipt by the defendant of a sum of money as interest on the note."

A kindred question was before our own court in Tucker v. Gentry, 93 Mo. App. 655, 660, and in disposing of the contention there made, this court, speaking through BROADDUS, J., said:

"Pierce, the payee of the note, transferred it to Todd who thereby became the holder. It is contended that the writing on the back of the note: 'Credit February 17, 1900, by seventy-four and 50-100 dollars ($74.50), balance due nine hundred and 93-100 dollars—which are to bear only six per cent interest from this date,' and signed by H. L. Todd, amounts to an indorsement by Todd. It seems to us, however, that it is plainly otherwise, and that the signature of Todd is to be construed as a mere attestation of the credit given and

of the reduced rate of interest the note shall bear from that date.''

Other cases are to the same effect, among which are Central Trust Company v. National Bank, 101 U. S. 68, 25 L. Ed. 876; Gray Tie & Lumber Company v. Farmers Bank, 60 S. W. 538; Pickering v. Cording, 92 Ind. 306.

Appellant cites Neuhoff v. O'Reilly, 93 Mo. 164; Lee et al. v. Turner, 89 Mo. 489; International Bank v. Carman Bank, 71 Mo. 197; Baabe v. Cramer, 278 Mo. 516, 531, in support of his contention that he is entitled to recover from the trust company because said company by its act clothed Terry with the usual and apparent evidence of ownership. The cases cited announce a well-settled rule that where the true owner of a negotiable or non-negotiable instrument, clothes another with the usual evidence of ownership, or with full power of disposition and third parties are thereby led into dealing with such apparent owner and receive a transfer of the instrument, they will be protected. The facts in the case at bar do not bring it within this rule. The trust company did not indorse the note or do any act that would clothe either the bank of Kidder, or Terry, its cashier, with the apparent evidence of ownership, or place them in a position to mislead the plaintiff, for this reason the rule invoked by appellant, that when one of two innocent parties must suffer for the wrongful act of another, he must suffer who placed the party doing the wrong in a position to do it, has no application.

It is next contended that it was a question for the jury to determine whether Terry purchased the note from the trust company or paid it, hence error to direct a verdict.

Whether or not Terry purchased or paid the note was a disputed question of fact, but this situation does not aid appellant. The trust company is sued as an unqualified indorser. If it should be conceded that Terry purchased the note, appellant, in order to make a case, would then have to go one step farther and prove that the trust company indorsed the note or clothed Terry with apparent evidence of ownership. The fact, if it be a fact, that Terry purchased the note, might be some evidence that both parties intended that the note should be indorsed, but such fact is no evidence of the character of indorsement intended.

The trust company could have indorsed the note either ''with'' or ''without'' recourse. No presumption arises from the sale of a note, that the seller intended to guarantee its payment by indorsing it in blank. We rule this contention against appellant.

The third and last contention is, that although the note was past due, this fact did not destroy its negotiability, and it became a new instrument payable on demand when indorsed and delivered to appellant.

It is true that a note negotiable in form, is not rendered non-negotiable by the fact that it is past due. It is also true that if such a bill be indorsed after due it becomes a new bill at sight, but these rules of law have no application in the instant case because the note in suit was not indorsed.

No error was committed in directing a verdict in favor of defendant, Commerce Trust Company, hence we affirm the judgment. *Williams, C.*, concurs.

PER CURIAM:—The foregoing opinion by FRANK, C., is hereby adopted as the opinion of the court. All concur, except *Trimble, P. J.*, absent.

