Turner v. Hoyle.

---

## TURNER v. HOYLE, *Appellant.*

95   337
43a  381

95   337
57a  286

95   337
67a   25

95   337
150  576

95   337
153  622
153  623

95   337
f156 174

95   337
86a  113

95   337
87a  485

1.  **Trustee, Sale by of Trust Property :** TITLE OF TRANSFEREE. When a trustee, with power to change investments and professing to act on behalf of and for the trust estate, induces a third person to buy from him trust property, or to make an advance upon it, the third person, acting in good faith, will acquire a good title, although the trustee convert the proceeds of the sale or advance to his own use. The third person so acting is not bound to see that the proceeds of his purchase or advance are properly applied by the trustee.

2.  ———— : ————. The foregoing rule has, however, no application when the trustee is not professing to act for or on behalf of the trust estate, or the third person is not dealing with him in good faith, believing that the trustee is making the sale or getting the advance on behalf of the trust estate.

3.  **Negotiable Note Overdue :** TITLE OF TRANSFEREE. The transferee of negotiable paper to whom it is transferred after maturity, acquires nothing but the actual right and title of the transferor, and takes it subject to all the equities with which it was incumbered in the hands of the party from whom he received it.

4.  **Trustee :** PURCHASING TRUST PROPERTY : NOTICE. A note payable to certain trustees and secured by a deed of trust, was by them endorsed as trustees to their successor in the trust. After maturity, the new trustee pledged both the note and deed of trust to secure his private debt, the person receiving the same claiming to be ignorant of the trust. *Held,* that under the facts of the case the person receiving said note was charged with notice that the note was held in trust and is liable for its conversion.

Turner v. Hoyle.

*Appeal from St. Louis City Circuit Court.*—HON. GEO. W. LUBKE, Judge.

AFFIRMED.

*Dyer, Lee & Ellis* for appellant.

(1) The trust deed creating the trust out of which this note springs confers upon the trustees full power and authority in the trustees to change the character of the fund. The language of the deed is as follows : "The said party of the second part is hereby authorized and empowered in his sound discretion, to sell and convey the same to any purchaser at public or private sale and to receive the proceeds thereof, which shall be by the said party invested and held subject to the same trusts which are by this deed impressed upon the property hereby conveyed." Under this full power of changing the character and the trust estate, Jamison had full authority as trustee to hypothecate the note in controversy. Williams on Ex'rs [6 Am. Ed.] 1498, 1500. (2) One who purchases from a trustee with notice that he is buying trust property, acquired a perfect title, if by the instrument creating the trust the trustee has power to sell or vary the securities. Perry on Trusts, par. 225 ; *Ashton v. Bank,* 3 Allen, 217 ; *Creighton v. Cringle,* 3 S. C. 77 ; *Dillaye v. Bank,* 57 N. Y. 354 ; *Fountain v. Anderson,* 33 Geo. 373 ; *Goodwin v. Bank,* 48 Conn. 564 ; *Shaw v. Spencer,* 100 Mass. 363, 389, 391. (3) And such purchaser, knowing that he is buying trust property, is put upon no inquiry except to ascertain whether the power to sell or vary securities exists. He is not responsible for misapplication of the purchase money. Perry on Trusts, pars. 225, 814, *Ashton v. Bank,* 3 Allen, 217; *Shaw v. Spencer,* 100 Mass. 391, 392 ; *Goodwin v. Bank,* 48 Conn. 564 ; R. S., sec. 2937 ; *Mason v. Bank,* 16 Mo. App. 275.

*Muench & Cline* and *Fred. Wislizenus* for respondent.

(1) There was no intent on the part of Jamison, trustee, to make a sale of the note in question with a view to reinvesting the proceeds; hence *Mason v. Bank*, 16 Mo. App. 275, and kindred cases have no application here. (2) The trustee having used the note as a mere collateral to secure a private debt, the transfer did not invest the transferee with title. *Jaudon v. Bank*, 8 Blatchf. 438; s. c., 15 Wall, 171; *Shaw v. Spencer*, 100 Mass. 338; *Garrard v. Pittsburgh Co.*, 29 Pa. St. 158; Perry on Trusts, secs. 475, 511a, 509. (2) Defendant had such notice in law of the want of power in Jamison to convey as rendered it impossible for him to acquire a good title to the note. It was overdue. *Ford v. Phillips*, 83 Mo. 523; *Julian v. Calkins*, 85 Mo. 206; 1 Parsons on Bills and Notes, 270, 274; *Vinton v. King*, 4 Allen, 562; *Parker v. Tuttle*, 44 Me. 462. (3) Other facts surrounding the transaction were such as to put a prudent man upon inquiry, and appellant is chargeable with knowledge of any facts which such inquiry might have developed. *Mcleod v. Bank*, 42 Miss. 112; Perry on Trusts, sec. 225; *Baker v. Bliss*, 39 N. Y. 70; *Carr v. Hilton*, 1 Curtis, 393; *Kennedy v. Green*, 3 My. & K., 719, 722; *May v. Chapman*, 16 M. & W. 355; *Deardorff v. Thatcher*, 78 Mo. 134; *Kenshaw v. Wells*, 38 Mo. 201; *Ramey v. Brooks*, 20 Mo. 105; *Fellows v. Wise*, 55 Mo. 414. (4) The deed of trust accompanying the note, if read, would have shown to Hoyle that he was dealing with trust money; he was bound to at least read the paper, and not doing so was negligent. *Kenshaw v. Wells*, *supra*. (5) The only exception to the rule is raised in cases of negotiable paper before maturity, such exception being demanded in the interests of commerce. *Hamilton v. Marks*, 52 Mo. 78;

*Fowler v. Brantly*, 14 Peters, 318; *Pringle v. Phillips,* 5 Sanf. 168; *Danforth v. Dart*, 4 Duer, 101.

BRACE, J.—In this action the plaintiff recovered judgment in the circuit court of the city of St. Louis for the sum of $4,325.32, damages for the conversion of a promissory note belonging to an estate of which he is the trustee. The facts in the case are substantially as follows: On February 9, 1874, Caroline O'Fallon *et al.* conveyed to Benjamin Farrar certain real estate in said city in trust for Fanny Wall, Ellen Smith, and Emily O'Fallon, with power "to sell and convey the same to any purchaser at public or private sale, and to receive the proceeds thereof, which shall be by the said party of the second part [said Farrar, trustee] invested and held subject to the same trusts which are by this deed impressed upon the property hereby conveyed." Benjamin Farrar having died on the seventh of November, 1878, John R. Farrar and D. D. Burnes were substituted as trustees in his place, who, on the twentieth of April, 1881, invested a part of said trust fund in the promissory note, for the conversion of which this action was brought, and which is as follows:

"$4,000.                    St. Louis, April 20, 1881.

"Two years after date, without grace, we promise to pay to the order of John R. Farrar and D. D. Burnes, trustees, four thousand dollars, for value received, with interest from maturity at the rate of six per cent. per annum, at the St. Louis National Bank.

"ESTATE OF BENJ. FARRAR, Dec'd,
"By SAMUEL SIMMONS, Executor,
"ANNA R. FARRAR, Executrix."

This note was secured by deed of trust of same date, executed by the makers of said note, on certain real estate in said city, in which the beneficiaries were designated as "D. D. Burnes and John R. Farrar, trustees for Mrs. Fanny Wall, Mrs. Ellen Smith, and Emily

O'Fallon, parties of the third part." On the seventeenth of January, 1884, W. C. Jamison succeeded Farrar and Burnes as trustee in 'the trust, and received from them, among other assets, the said note and deed of trust, the note bearing the following endorsements:

"Int. paid on this note to October 20, 1883.

"Without recourse.   John R. Farrar,

"D. D. Burnes, Trustees."

On the seventeenth of March, 1884, Jamison borrowed of the defendant six thousand dollars, for which he executed to defendant his promissory note of that date, and as collateral security in part for said loan, endorsed said trust deed and promissory note and delivered the same, together with the deed of trust given to secure its payment to the defendant.   On the first of July, 1884, the plaintiff was appointed trustee in place of said Jamison, and thereafter made demand of said note of the defendant, and upon his refusal to deliver or account for the same plaintiff brought this suit.   The defendant, examined in his own behalf as a witness, gave substantially the following account of the transaction between him and Jamison:   "On March 17, Mr. Jamison met me and asked me if I could loan him six thousand dollars.   I told Mr. Jamison that I had the money, but needed it or would need it in a very short time.   Jamison said he could give me good security for the loan and he would also pay me the money when I needed it.   I told Mr. Jamison that, under these circumstances distinctly understood, that if he would give me good collateral and pay me this money as I wanted it, I would make him the loan.   He said it was all right. I said I would be in his office at ten o'clock the next day to arrange it with him.   He said, 'meet me at three o'clock this afternoon.'   I went into his office and Mr. Jamison was sorting a bundle of papers.   He said, 'Charlie, I am looking over collateral for this money.'

He threw out the collateral and said, 'here is a one-thousand dollar deed of trust—note secured by deed of trust—and here is another for four thousand dollars.'' He said, 'I want to give you two thousand dollars more;' and he looked through and said, 'I cannot put my hand on more collateral to-day, but I will fix that with you in a day or two, and will make that all right.' I hesitated then about giving Mr. Jamison a check for six thousand dollars, but on his promise that he would give me that extra collateral in a day or two, and supposing at that time that Mr. Jamison was as solvent as any man in St. Louis, I drew up a check and gave it to him. He gave me his note and these collaterals, one of which was for four thousand dollars and one one thousand dollars. I gave him the money, the six thousand dollars, on the seventeenth of March, and got these collaterals on the same day and before I gave him the check. I got this four-thousand dollar note in controversy in this suit and another thousand dollar note secured by a deed of trust at that time when I gave him the check. At that time I had no knowledge or intimation in any way that Mr. Jamison held the note sued upon in the capacity of a trustee. I supposed that Mr. Jamison had come into possession of the note by purchase or some other way. I had no idea that he was the trustee of any such estate. I supposed he owned the note. I looked at the note and saw who the payees were; the payees were J. R. Farrar and D. D. Burnes, trustees; then I looked on the back of the note and saw the endorsement, 'Without recourse. D. D. Burnes, J. R. Farrar, trustees;' read the deed of trust but paid very little attention to it; read the description of the property in the deed of trust, the beneficiaries were some parties named O'Fallon and Wall; saw the note was overdue; asked no questions. Mr. Jamison simply said, here are two good collaterals. Looking upon the way in which the note was made, it satisfied me, and the description of the

property that secured the note, I was satisfied and took them."

That the promissory note pledged by Jamison as collateral security for the loan which defendant made him and for which he executed his individual note to the defendant was a part of the trust fund, that the plaintiff is the trustee of that fund, that the money obtained by Jamison was not applied to any of the purposes of the trust, but to his own use, is undisputed. But it is contended that the instrument creating the trust having conferred upon the trustees the power to change the character of the fund, the trustees had power to sell or vary the securities, and in hypothecating the note as he did he conferred upon defendant a perfect title, and could do so although the defendant may have known that the note was trust property. This point was not overlooked by the learned judge before whom the case was tried below, who furnishes an answer to this contention in the following language: " When a trustee with power to change investments, and professing to act on behalf and for the trust estate, induces a third person to buy from him trust property, or to advance upon it, the third person acting in good faith will acquire a good title although the trustee convert the proceeds of the sale or advance to his own use. The third party acting under the circumstances stated, is not bound to see to it, that the proceeds of his purchase or advance are properly applied by the trustee. But this rule has no application when the trustee is not professing to act for or on behalf of the trust estate, or the third party is not dealing with him in good faith, believing that the trustee is making the sale or getting the advance on behalf of the trust estate. In the case at bar the evidence shows that Jamison solicited Hoyle to make him a short loan upon good collateral. He did not mention the trust; he did not ask for a loan on behalf of the trust; he asked it for himself individually,

and the loan was made to him individually. On the face of the transaction it was a clear case of the conversion by Jamison of a trust asset, for his individual purposes, and later developments proved that it was nothing else. Under these circumstances it would seem very clear that Hoyle cannot assert any title as against the present trustee if he took the note with notice that it was part of the trust property, or was chargeable with notice of that fact.''

Jamison, in pledging the note to defendant as security for the individual debt for the money loaned him by defendant, was guilty of a gross breach of his trust and in that act was making a fraudulent misapplication of the trust fund ; the defendant in receiving the security participated in the misapplication but not in the fraud, and the only ground upon which he claims in his evidence to be protected from the consequences of his conversion of the note belonging to the trust fund, acquired by him through such fraudulent misapplication by Jamison, is, not that Jamison in transferring the note to him was exercising power conferred upon him by the instrument creating the trust, apparently for the purposes of the trust, but that, being the holder of the note by proper endorsement from the payees, defendant took it from him as security for the loan in good faith, without any knowledge that Jamison held it as trustee, but believing that he was the owner thereof in his own right.

This was the only defence disclosed by the evidence, and thereupon the defendant asked the court to declare the law to be, that ''if he received the note in controversy from Jamison as security for, and contemporaneous with, a loan of six thousand dollars by him made to said Jamison, and at the time when said note was so received by him he had no actual knowledge that he (Jamison) held said note as trustee, and took said

note in good faith, then the court should find that the defendant Hoyle acquired a good title to said note.''

The security taken being in the form of a negotiable promissory note, the defence would have been a good one, notwithstanding the fact that the payees were therein designated as trustees, and the deed of trust given to secure its payment, delivered to the defendant with the note, pointed out the beneficiaries of the trust, if the note had not been overdue and dishonored at the time it was pledged. *Mayes v. Robinson*, 93 Mo. 114; *Hagerman v. Sutton*, 91 Mo. 519. But there is this vital distinction between the rights of a transferee who received the paper before, and one who received it after maturity. The transferee of negotiable paper to whom it is transferred after maturity, acquires nothing but the actual right and title of the transferor; * * * and takes it subject to all the equities with which it was encumbered in the hands of the party from whom he received it. 1 Daniel on Neg. Inst., sec. 724a ; *Ford v. Phillips*, 83 Mo. 523; *Julian v. Calkins*, 85 Mo. 202 ; *Wheeler v. Barrett*, 20 Mo. 573.

The defendant in this case, having received the note in controversy long after it became due, acquired, by virtue of its endorsement and delivery to him for value, by Jamison, no higher or greater title than Jamison had, he stands in the shoes of his endorser. The beneficiaries of the trust are the real owners of the note ; Jamison had no such title as could be set up by him against them, or the plaintiff in this case, in whom is vested the legal title to said note in trust for them, in an action for its recovery, and defendant, by the transfer to him, acquired no such title as could defeat plaintiff's action against him for its conversion, unless, upon the evidence, he is brought within the protection of the equitable principle, that when one of two innocent persons must sustain a loss occasioned by the fraud of a third, it must fall upon the one who puts it in the

power of the third person to commit the fraud; which, in its application to negotiable paper transferred after maturity, has been formulated into a rule that has received the sanction of this court; "that, if the true owner of a negotiable note overdue, or a non-negotiable note clothes another with the usual evidences of ownership, or with full power of disposition, and third persons are led into dealing with such apparent owner, they will be protected in their dealings; * * * Their rights in such cases do not depend on the actual title or the authority of the party with whom they deal directly, but are derived from the act of the real owner which precludes him from disputing, as against them, the existence of the title, or power which, through negligence or mistaken confidence, he caused or allowed to be vested in the party making the conveyance." *Neuhoff v. O'Reilly*, 93 Mo. 164; *Lee v. Turner*, 89 Mo. 489; *International Bank v. German Bank*, 71 Mo. 195.

This is not a case, however, in which this principle, which operates by way of estoppel, can be invoked; Jamison was never clothed with full power to dispose of this overdue negotiable promissory note, or of the deed of trust given to secure it; his power of disposition was qualified and limited to the single purpose of disposing of it for reinvestment for the benefit of the trust. He had, in fact, no power to pledge it for his individual debt; nor was he the apparent owner of it in his own right. The apparent title that he had thereto was that derived from the payees of the note by their endorsements. These payees were designated in the body of the note as trustees, as trustees they endorsed it. The deed of trust to secure it was upon condition of payment to these endorsers as trustees, and in it the beneficiaries of the trust were pointed out and named; the character of the note as a trust asset, was stamped upon its face and its back, and proclaimed by the security which accompanied it. They needed simply to be interrogated to

Turner v. Hoyle.

disclose the nature of the title by which Jamison held it. Yet the defendant took this overdue note to secure the individual debt of Jamison to him without making a single inquiry as to his title, or giving any heed to the contents of the note or deed of trust, which alone would have given any reasonably prudent man warning that Jamison was holding this note in a fiduciary capacity and not in his own right. The trustees who had charge of this estate prior to Jamison's appointment, and from whom he received it, had furnished ample *indicia* upon the face of these papers, by which this note could be recognized as part of the trust property. The defendant taking it after maturity, at his own risk, failed to inquire and ascertain, as he might easily have done, that this was not Jamison's property, and that he had no power to pledge it for his private debt. He had confidence in Jamison, saw the note had been endorsed by the payees, was willing to risk Jamison's title, did risk it, and got just such title as Jamison had, and no other. He has become the victim of his own misplaced confidence and negligence, and not of the misplaced confidence or negligence of the real owners of the note, or of those from whom Jamison received it, neither of whom has done any act which should preclude the plaintiff in this action from setting up the superior title of such real owners, against that acquired by defendant from Jamison.

The trial court held that when the defendant received the note, he did so, charged in law with notice that Jamison held it as trustee; that having converted this trust note to his own use, he must respond to the plaintiff, the present trustee of the estate of which it was an asset, in damages to the amount of the value of the note, and rendered judgment accordingly.

We find no error in the ruling of the court, and the judgment is affirmed. All concur.