Bank v. Carondelet Real Estate Co.

GERMAN AMERICAN BANK, Appellant, v. CARONDELET REAL ESTATE COMPANY et al.

### Division One, June 14, 1899.

1. **Negotiable Notes**: TITLE BY DELIVERY: ATTORNEY IN FACT. Where the payee in a note has given her son a power of attorney "to sign or accept all orders, promissory notes, drafts or bills of exchange, and to indorse such checks, notes or bills," and he as president of a corporation of which he is the *alter ego* executes certain negotiable notes payable to her and then in her name as her attorney in fact indorses them "without recourse on me", the notes are negotiable by delivery, and the title passed to whomsoever he delivered them, and a holder was *prima facie* the owner.

2. ———: ———: ———: TITLE TO DEED OF TRUST. And where such notes were secured by a recorded deed of trust, the title thereunder passed with the notes upon their delivery, as an incident to the debt, although such deed of trust was not in fact delivered.

3. **Record of Instrument**: NOTARY AS GRANTEE: NOTICE. But where the trustee in a deed of trust is also the notary before whom the acknowledgment is taken, it is improper to admit it to record, and its record does not impart constructive notice to subsequent purchasers.

4. ———: SECTION 4864: STATUTE OF REPOSE. Section 4864, Revised Statutes 1889, providing that the records of all instruments and all recorded instruments, which have not been acknowledged or proven, or acknowledged not according to law, shall hereafter, when recorded for one year, impart notice to all persons of their contents, is a statute of repose, passed originally to quiet vexatious land titles, and is applicable only to records made berore its passage.

*Appeal from St. Louis City Circuit Court.*—HON. PEMBROOK R. FLITCRAFT, Judge.

AFFIRMED.

FRED. WISLIZENUS for appellant.

(1) The only defense against a purchaser of negotiable paper before maturity is bad faith on his part. He is not

bound by constructive notice or by knowledge of facts that might put him on inquiry. Hamilton v. Marks, 63 Mo. 167; Borgess v. Vetter, 142 Mo. 573; Bank v. Schoen, 56 Mo. App. 167; Jennings v. Todd, 118 Mo. 304; Johnson v. McMurray, 72 Mo. 278; Meyer v. Robinson, 93 Mo. 115; Turner v. Hoyle, 95 Mo. 337. (2) Though the indebtedness for which collateral is given be renewed from time to time, by giving of fresh notes, the pledge is to be dated from the time it was first made. Shrewsbury Savings Institutions Appeal, 94 Pa. St. 311; Bank v. Hull, 83 N. Y. 345; Pinney v. Kimpton, 46 Vt. 83; Bank v. McNeil, 10 Bush. (Ky.), 54; Fisher v. Fisher, 98 Mass. 303. (3) The presumption is that alterations in a deed of trust were made before delivery. McCormick v. Fitzmorris, 39 Mo. 24; Burnett v. McCluey, 78 Mo. 676; Givens v. Whiteside, 65 Mo. App. 3; Noah v. Insurance Co., 69 Mo. App. 335; Holton v. Kemp, 81 Mo. 561; Stillwell v. Patten, 108 Mo. 352. (4) After signing and sealing, the grantor may change the deed, which will be good on delivery without fresh execution. Bassett v. Bassett, 51 Me. 130; Prettyman v. Goodrich, 23 Ill. 330; Malarin v. U. S., 1 Wall. 288; Burnett v. McCluey, 78 Mo. 687. (5) A deed which is *de facto* on the records imparts full notice from one year after it was put of record, even though not entitled to record. R. S. 1889, sec. 4864; Allen v. Moss, 27 Mo. 354; Bishop v. Schneider, 46 Mo. 472; Gatewood v. Hart, 58 Mo. 261; Campbell v. Laclede Gas Light Co., 84 Mo. 352. (6) A deed releasing property from a deed of trust, when made without authority, is a nullity, and affords subsequent purchasers of the property no defense against the real holder of the secured debt. Borgess v. Vette, 142 Mo. 574; Lee v. Clark, 89 Mo. 553; Hagerman v. Sutton, 91 Mo. 533; Bank v. Frame, 112 Mo. 514; Feld v. Roanoke Ins. Co., 123 Mo. 603; Kelly v. Staed, 136 Mo. 430.

Fisse & Kortjohn for respondents.

(1) The statute has no application in any case except the two cases specifically mentioned; first, where a deed is not

acknowledged at all; and, next, where the acknowledgment is defective in form.    Its language is not fit to meet a case like this, where the acknowledgment is in good form but before an unauthorized person.    Bishop v. Schneider, 46 Mo. 472; Gatewood v. Hart, 58 Mo. 263; Campbell v. Laclede Gas Light Co., 84 Mo. 362.    (2)    Valid acknowledgment is an essential prerequisite to a record, and without such acknowledgment no recorded deed can be held to impart notice.    Hunt v. Selleck, 118 Mo. 588; Harrington v. Fortner, 58 Mo. 474; Musick v. Barney, 48 Mo. 458; Callaway v. Trask, 50 Mo. 420; Seeking v. Hebel, 1 Mo. App. 340.    (3)    The acknowledgment is insufficient because the person acting as the officer to take the acknowledgment was also party to the deed.    A deed so insufficiently acknowledged can not properly be recorded, and is not constructive notice.    See Stevens v. Hampton, 46 Mo. 406; Dail v. Moore, 51 Mo. 589; Black v. Gregg, 58 Mo. 565; Hainey v. Alberry, 73 Mo. 427; Williams v. Bank, 72 Mo. 292.

BRACE, P. J.—This is a suit in equity to set aside a release of, and to foreclose a deed of trust, in which the judgment was for the defendants, the bill dismissed, and the plaintiff appeals.

On the 19th day of May, 1892, one William B. Lange, being at the time attorney in fact of his mother Mathilda Lange and president of the Carondelet Real Estate Company, executed a deed of trust of that date, upon the real estate described in the petition, signed "Carondelet Real Estate Company by Wm. B. Lange, President" to secure the payment of five negotiable promissory notes, one principal for $4,000, and four interest notes for $120 each, of the same date, executed by him and signed in the same manner, payable to the said Mathilda Lange, the principal note payable two years after date, and the interest notes payable semi-annually during the period of the principal.    On the next day, May 20th, 1892, William B. Lange as president of the real estate company

acknowledged the deed before a notary public, and the same was on the same day filed for record.　At the time the deed was acknowledged the name of Ernst Renner appeared in the deed as trustee, when filed for record that name had been erased and "Chas. F. Vogel" written in place of it, and the notes had been indorsed, "Without recourse on me, Mathilda Lange, per Wm. B. Lange, Atty in fact."　In this condition the deed and notes were exhibited by William B. Lange at the recorder's office just before the filing of the deed for record to August Gehner, president of the plaintiff bank, of which the said Lange had been a customer since September, 1891, with the view of obtaining a loan upon the security from Mr. Gehner, and upon his consenting to consider the proposition, the deed was delivered to the officer for record, and the notes to Gehner in whose personal possession they remained until the sixth day of August, 1892, when Lange, having negotiated for a loan from the bank on his individual note of that date for the sum of $3,800, the five notes at his request were on that day delivered to the bank by Mr. Gehner as collateral security for the loan, and thereafter, except two of the interest notes which seem to have been taken up, continued in the possession of the bank as such collateral until this suit was brought on the 18th of January, 1895, Lange's note for the loan being renewed from time to time until his death, and the last renewal note being for the sum of $2,300, dated January 30th, 1894. The deed of trust was never delivered to the bank by Lange, he accounting for its absence at the time of the delivery of the notes secured thereby, by saying it had been lost, and that he would furnish a certified copy thereof which he afterwards did.

On the 20th day of April, 1893, while the bank was thus holding these notes, Lange executed a quitclaim deed to the Carondelet Real Estate Company, signed "Mathilda Lange, by Wm. B. Lange, Attorney in fact," in release and satisfaction of said deed of trust, which on the same day was duly

acknowledged by him in that character, filed for record and duly recorded, which is the release sought to be set aside.

Afterward on the 20th of May, 1893, Lange executed and acknowledged a deed of trust signed "Carondelet Real Estate Company by Wm. B. Lange, President," conveying the premises to Mott, trustee, to secure a bond of that date, to the South End Building & Loan Association of St. Louis, for the sum of $5,400 executed by him and signed in the same manner, which deed of trust was on the 23d of May, 1893, filed for record and duly recorded. And afterward on the 7th of July, 1893, in like manner the premises were conveyed to Maggie Christie, subject to the deed of trust in favor of the building and loan association, who with her husband, Edward Christie, are in possession of the premises and who together with said association, the trustees, Mott and Vogel, Mrs. Lange, and William B. Lange's administrator, are made parties defendant in this action.

The evidence tends to prove that during the period of these transactions, the said William B. Lange was of good reputation. That he was in fact The Carondelet Real Estate Company, which existed as a corporation simply for the purposes of his business. That in all these dealings of the parties with him they acted in entire good faith, that Mrs. Lange had in fact no interest whatever in the property being dealt with, and knew nothing of these transactions. Thus it was that William B. Lange by means of the relations he sustained to his mother and this corporation, was enabled to perpetrate a fraud by which some one of the innocent parties to this action, in which no relief is sought or could be given against either of them, must be made to suffer. Who shall be the sufferer? can only be determined by the application of strict legal principles.

(1) The starting point of the inquiry is the power of attorney given by Mrs. Lange to her son, duly executed, acknowledged, and of record when all of these transactions were had. It was of the most plenary character, constituting him

in fact her *alter ego* to transact any and all kinds of business for her, and in her name, including the power "to sign or accept all orders, promissory notes, drafts or bills of exchange, and to indorse such checks, notes or bills." His authority to draw the notes in the name of the real estate company is not questioned. His authority to accept the notes payable to his mother and to transfer them by indorsing her name thereon, is beyond question. When his name was indorsed thereon in the manner in which it was, the notes became negotiable by delivery. Thereafter the title to the paper was *prima facie* in the holder, whoever he might be, and passed to whomsoever he might deliver them. The title to the notes was thus in William B. Lange, when he delivered them to Mr. Gehner, and passed by that delivery to him, and passed by his subsequent delivery to the bank. The bank thus for value, before maturity in due course of business, acquired title to these notes from the holder who was the only apparent and in fact the real owner thereof, at the time, and it would seem that its title to the notes is also beyond question. The fallacy of the argument of counsel for respondents in support of their position that the bank was not an innocent purchaser, is in assuming that the notes bore upon their face evidence of the fact that they were the property of Mrs. Lange. They did no such thing. They did bear upon their face evidence that they had at one time been her property, but that they were so no longer; that her property in them had passed by indorsement to the holder, whoever he might be, and that, at the time they were hypothecated to the bank, they were in fact the property of such holder. The fact that her name had been indorsed by her attorney in fact suggested no present ownership in her of the notes, or absence of ownership in that attorney, if he then happened, as was the case, to be the actual holder of the notes. The only inquiry that fact suggested was, whether he had authority to indorse her name upon the notes, and having had such authority at the time the notes were so indorsed, when the

notes were thereafter delivered to the bank the title passed to it under well settled principles of the Law Merchant. The cases of Turner v. Hoyle, 95 Mo. 337, and Mason v. Bank, 16 Mo. App. 275; s. c., 90 Mo. 452, are not in point in the case.

(2) On the trial there was some evidence introduced tending to show that Lange subsequently used the deed of trust which was not delivered to the bank, in connection with duplicates of the notes therein recited, to secure another loan from other parties, but the weight of the evidence was, that the notes transferred to the bank were the identical notes for the security of which the deed of trust was executed, and upon well settled principles of law title under the deed of trust, as incident to the notes, passed to the bank. [Hagerman v. Sutton, 91 Mo. 519; Mayes v. Robinson, 93 Mo. 114.]

(3) The notary before whom the deed was acknowledged was Charles F. Vogel, and when the deed was presented for record, he appeared therein as the grantee, and it was so recorded. The recording of such a deed was improper, and the record thereof does not impart constructive notice to subsequent purchasers, under sec. 2419, R. S. 1889. [Stevens v. Hampton, 46 Mo. 404; Dail v. Moore, 51 Mo. 589; Black v. Gregg, 58 Mo. 565.]

But it is contended that the record had that effect under sec. 4864, R. S. 1889, which reads as follows: "All records made by the recorder of the proper county one year before this law takes effect, by copying from any deed of conveyance, deed of trust, mortgage, will or copy of a will, or other instrument of writing, whereby any real estate may be affected in law or in equity, that has neither been proved nor acknowledged, or which has been proved or acknowledged, but not according to the law in force at the time the same was recorded, shall hereafter impart notice to all persons of the contents of such instruments; and hereafter when any such instrument shall have been so recorded for the period of one year, the same shall thereafter impart notice to all persons of the contents of

such instruments, and all subsequent purchasers and mortgagees shall be deemed to purchase with notice thereof."

It has always been thought that this section of the statute applied only to instruments recorded before its passage, and doubtless the profession would be much surprised to learn that it applied to instruments subsequently recorded, and that by a proper construction this law, originally intended "to quiet vexatious land litigation," had been converted into one that so qualifies the whole law in regard to the acknowledgment certificate and recording of instruments, as to render it in a great measure useless.    The text of the section does not warrant such a construction, the subject of the first clause is "all records of instruments made one year before the law takes effect." The subject of the second clause is those "instruments," as plainly indicated by the use of the word "such" in the second clause, and reading the whole section together it is evident that it applies to the records of such instruments, as were made one year before the law took effect, and to the instruments recorded one year before the law took effect.    Under the first clause the record imparts notice, under the second the instrument imparts notice.

The law in substance as contained in the first clause of the section was first enacted in 1847, in the following form: "The records heretofore made by the recorder of the proper county, by copying from any deed of conveyance, deed of trust, mortgage, will, or copy of a will, that has neither been proven nor acknowledged, or which has been proven or acknowledged, but not according to the law in force at the time the same was done, shall, from and after the passage of this act, impart notice to all persons of the contents of such instruments; and all subsequent purchasers and mortgagees shall be deemed in law and equity, to purchase with notice thereof."    Acts 1847, p. 95.    And in this form with unimportant verbal modifications was carried into the Revisions of 1855, 1865 and 1879, and in

that form continued to be the law until 1887 and was uniformly recognized to be a statute of repose applicable only to records made before its passage. [Bishop v. Schneider, (1870), 46 Mo. 472; Gatewood v. Hart, (1874), 58 Mo. 261; Campbell v. Laclede Gas Light Co., (1884), 84 Mo. 352.]

By an act approved March 31, 1887, (Sess. Acts p. 183), the law assumed its present form, with the obvious purpose of extending protection to instruments recorded in the period between the passage of the act of 1847 and one year before the passage of the act of 1887.   In doing so the legislature seems to have thought that it was desirable that the instruments themselves, recorded in that period, should impart notice as well as the records thereof, and hence the second clause, and this is the whole import of the change made.   There is nothing in the text, purpose or history of this enactment to warrant the conclusion that it was intended to protect instruments recorded subsequent to the passage of the latter act, and it follows that, as the defendant purchased upon the faith of the record title, and the record failing to impart to them any notice of a subsisting title under the deed of trust, they took the title to the premises as against the plaintiff claiming under that deed. The court committed no error in refusing to enforce it, and in dismissing the bill, and its judgment is affirmed.

All concur.