BOOHER et al., v. ALLEN, Appellant.

Division One, February 5, 1900.

1. **Lien**: RELATION. The purchaser's title at foreclosure sale under a deed of trust relates back to the date of that instrument.

2. ———: PRIORITY: FRAUDULENT DEED OF TRUST: JUDGMENT. The purchaser at an execution sale made long after a deed of trust, takes the title rather than the purchaser at the trustee's sale, if the deed of trust was made to hinder, delay, and defraud the mortgagor's creditors and the purchaser at the trustee's sale had knowledge of the fraud.

3. ———— : FRAUD: PRIVITY WITH BONA FIDE HOLDER. And where the deed of trust and note therein described (which was made payable to B. or bearer) was retained by the mortgagor. and he used them as collateral to secure a bank for a loan, which he applied to the payment of a stock of goods and thereby afforded his creditors recourse against the goods, yet as the purchaser at the foreclosure sale, who knew the fraudulent purpose of the whole scheme and participated in it, did not acquire title from the bank, and since there was no privity between him and the bank's *bona fide* holder of the note, nor between him and the transaction which resulted in paying for the mortgagor's goods, the deed of trust did hinder and defraud creditors, and the purchaser's title thereunder is fraudulent, since the mortgagor after he again obtained possession of the note from the bank again negotiated it after maturity, aided by the purchaser and with knowledge by him of the whole fraudulent scheme.

4. **Note:** NEGOTIATION AFTER MATURITY. One who purchases a note after its maturity, even though he pays full value for it, takes it subject to any defense that might have been made to it had it remained in the hands of the assignor. He takes it charged in law with notice of any infirmity in it or in the deed of trust securing it.

Appeal from Buchanan Circuit Court.—*Hon. A. M. Woodson,*
Judge.

AFFIRMED.

*W. G. Hine, P. Mercer* and *Davis, Ensor & Davis* for appellant.

(1) Even if the deed of trust was legally void for want of delivery, it was intended by the parties to be a mortgage, or lien on the land, and it was an equitable mortgage, and appellant bought it as such, and his rights against Ensor, or against these plaintiffs who claim Ensor's title, are the same in equity that they would be if the mortgage was legally perfect. Martin v. Nixon, 92 Mo. 26. (2) The quit claim deed of Heren to Witten at Ensor's request, conveyed Ensor's interest in the land only, leaving it subject to any equities or claim that Mary E. Martin may have had to it, just as if no conveyance had been made. It could not injure, delay or defraud her. Mann v. Best, 62 Mo. 491; Phoenix Ins. Co. v. Landis, 50 Mo.

App. 116; Stoefel v. Shroeder, 62 Mo. 147; Eoff v. Irvine, 108 Mo. 378. (3) Ensor had a right to sell any of his property to pay his debts. Dougherty v. Cooper, 77 Mo. 528; Osborn v. Robinson, 80 Mo. 541; Singer v. Goldenberg, 17 Mo. App. 549; Schroeder v. Bobbett, 108 Mo. 289; Larabee v. Franklin Bank, 114 Mo. 592; Baker v. Harvey, 133 Mo. 653; Gens v. Hargadine, 56 Mo. App. 245. (4) Appellant Allen would not be affected by any fraud in the conveyance unless he had knowledge or notice of it. Dougherty v. Cooper, 77 Mo. 528; Durkee v. Chambers, 57 Mo. 575; Henderson v. Henderson, 55 Mo. 534.

*Henry S. Kelly* and *Booher & Williams* for respondents.

(1) Written conclusions of fact found by the court are in the nature of a special verdict, and where there is evidence tending to establish the facts so found, the Supreme Court will not disturb them if the conclusions of law are correct. Freeman v. Moffit, 119 Mo. 280; Lumber Co. v. Mining Co., 78 Mo. App. 681; Nelson v. Railroad, 66 Mo. App. 647; Griffith v. Construction Co., 46 Mo. App. 539; Freeman v. Moffit, 135 Mo. 288; Blount v. Spratt, 113 Mo. 48; Rannells v. Isgrigg, 99 Mo. 28; Leedom v. Dickens, 80 N. W. Rep. 94; Bank v. Newkirk, 144 Mo. 481. (2) If a person who is insolvent or in failing circumstances purchase property with his own money and has it conveyed by his vendor to a third party the conveyance is fraudulent, and as to creditors it is as if it had never been. Henderson v. Dickey, 50 Mo. 164; Howe v. Wyssman, 12 Mo. 169; Lillard v. Shannon, 60 Mo. 522; Gamble v. Johnson, 9 Mo. 598. (3) Where the person expressed as payee in the note and as mortgagee in an accompanying mortgage never had any knowledge of or interest in the transaction and such instruments were never delivered to him or any one authorized by the mortgagee to receive them, but were delivered to another, such instruments are void for want of a legal delivery. Shirley v. Burch, 18 Pac.

Rep. 351; 1 Jones on Mort., sec. 86; Clark v. Bank, 66 Fed. Rep. 404; Rogers v. Heads Iron Co., 70 N. W. Rep. 527; Barnes v. Cox, 79 N. W. Rep. 550; Alliance Milling Co. v. Eaton, 25 S. W. Rep. 618; Kuh v. Garvin, 125 Mo. 563; Burke v. Adams, 80 Mo. 618; Craves v. Rositter, 116 Mo. 338; Hammerslough v. Cheathem, 84 Mo. 13; Tiedeman on Commercial Paper, sec. 294; Gibson v. Miller, 29 Mich. 355; (4) Positive knowledge and knowledge of facts which put a person upon inquiry are both actual notice. Hill v. Tissier, 15 Mo. App. 299; Maloney v. Bacon, 33 Mo. App. 50. (5) The deed of trust to Brockett as beneficiary, never having been delivered to him, nor to any one authorized by him to receive it, is void for want of a legal delivery. 1 Jones on Mort., sec. 86; Shirley v. Burch, 16 Ore. 83; 2 Pingrey on Real Property, sec. 792; 1 Devlin on Deeds, sec. 260; Goodwin v. Owen, 55 Ind. 243. (6) Appellant purchased this note more than three months after the first coupon interest note matured, which latter has not yet been paid; and hence appellant is charged with notice of all the facts and circumstances surrounding the issue of the paper which made the note absolutely void in his hands. Piersol v. Shelley, 42 Pac. Rep. 922; Owens v. Evans, 31 N. E. Rep. 999; Tiedeman on Commercial Paper (1 Ed.), sec. 297; Chouteau v. Allen, 70 Mo. 339; Kelley v. Keeshaw, 92 Mo. 614; Agan v. Shannan, 103 Mo. 669; Miller v. Muir, 105 Mo. 428.

MARSHALL, J.—This is a proceeding in equity to set aside certain deeds and a deed of trust upon land in Andrew county, on the ground that they are frauds.

Stated in the order of their occurrence the facts are as follows:

On the 26th of May, 1891, Lydia L. Baker owned three hundred and ninety acres of land. She was an old lady and had two children, Mary E. Martin and Martha A. Baker.

William Heren and Thomas H. Ensor, partners, were her attorneys, as they were also the attorneys of her daughter Martha. Thomas H. Ensor and William B. Allen, the defendant, were partners in the business of abstractors of titles, and the two firms, so composed, had offices together. On said date Lydia L. Baker conveyed two hundred and seventy acres of said land (with all her personal property) to Martha A. Baker. It is charged that this deed was procured by the fraud, deceit and undue influence of Martha A. Baker and of Heren & Ensor, her said attorneys. On the same date, by alleged similar means, Lydia L. Baker conveyed to William Heren (but in reality for Heren & Ensor) the remaning one hundred and twenty acres. Heren at the same time executed to Martha A. Baker a defeasance to said land, agreeing to account to her for the land. Lydia L. Baker died intestate as to the land on the 27th of December, 1891.

About the 22d of January, 1892, Martha A Baker surrendered to Heren & Ensor the defeasance and in consideration therefor they agreed to defend all suits that might be brought against her to set aside the transfers of said real and personal property by her mother to her.

On the same day (January 22, 1892), Heren, by quitclaim deed, conveyed the one hundred and twenty acres to James D. Witten for an alleged consideration of $3,600, but in fact the conveyance was voluntary and without consideration. Allen, the defendant, took the acknowledgment to the deed, as a notary public.

On the same day ( January 22, 1892), James D. Witten executed his note for two thousand dollars payable two years after date, with eight per cent interest per annum, to Justus W. Brockett, or bearer, and secured the same by a deed of trust upon the one hundred and twenty acres. D. D. Burnes was named as the trustee in the deed. But neither the note nor deed of trust was ever delivered to either Brockett or Burnes, and neither of them knew anything about it. There was a

person named Justus W. Brockett, but he never knew anything of the transaction and never loaned Witten any money. Burnes refused to have anything to do with the matter or to act as trustee as soon as he heard of it. The note and deed of trust were delivered to Thomas H. Ensor, and were by him used and negotiated as hereinafter stated. On the same day Witten deeded the land to Ensor's wife, for an alleged consideration of $2,600, but in fact there was no consideration therefor.

On the 16th of February, 1892, Mary E. Martin instituted suit against Martha A. Baker seeking to have the deed to the two hundred and seventy acres set aside, and filed a proper *lis pendens*, which the defendant Allen saw and made a record of.

Not having correct information as to the deed of trust from Witten to Brockett for $2,000, and believing that Brockett had loaned the money evidenced by that note and secured by that deed of trust, in good faith and without notice of her rights, Mary E. Martin did not sue to set aside the deed from her mother to Heren, or the deed from Heren to Witten or the deed of trust from Witten to Brockett, but brought suit against Heren and Ensor to recover the value of her interest in the one hundred and twenty acres. This suit resulted on the 9th of March, 1894, in a judgment in her favor and against Ensor for fourteen hundred dollars, and on the 19th of July, 1895, the one hundred and twenty acres were sold by the sheriff under an execution, to satisfy said judgment, and the plaintiffs, Booher and Williams, became the purchasers thereof.

In the meantime, however, Ensor, at a time not disclosed by this record, pledged the note and mortgage to the National Bank of St. Joseph, as collateral security for a loan of $2,000 by the bank to him. Thereafter, at a time also not disclosed, Ensor obtained the note and mortgage from the bank, but whether by paying the loan for which they were collateral, or

in what manner, is not shown.    Thereafter on the 4th of October, 1894 (which was eight months and twelve days after the note became due), Ensor negotiated the note and transferred the mortgage to the defendant, Allen, and received from him therefor a check for two thousand dollars drawn on the State Bank of Savannah, and payable to the order of W. Aaron Kohl or bearer.    Kohl knew nothing about this check or transaction and never received the check or the money.    But Ensor collected the check and disposed of the proceeds for his own benefit, by paying between seventeen and eighteen hundred dollars, which he owed, to the bank, for which defendant, Allen, was security, and by having the remainder deposited to his credit in the bank.    On the 14th of January, 1895, Ensor's wife conveyed the land, subject to the deed of trust, to defendant Todd, but as the mortgage was afterwards foreclosed Todd's title was cut out and he disclaims any interest in this land, and hence is practically out of this case.

Thus matters stood until in the fall of 1895, nearly a year after Mrs. Martin had obtained her judgment against Ensor, and several months after the plaintiffs had acquired title to the land at the sheriff's sale, under the Martin judgment. Then Burnes (the trustee named in the deed of trust) refusing to act, Allen caused the defendant, Kelly, who was the sheriff, as the deed prescribed in such event, to act as trustee, and to advertise the property for sale under the Witten deed of trust.

The plaintiffs then began this suit in equity, asking to have the deed of trust canceled on the ground that it was fraudulent and made to hinder, delay and defraud Ensor's creditors, and for an injunction to restrain the sale.    No injunction, however, was granted, so the sale was had under the deed of trust, on the 22d of October, 1895, and the defendant, Allen, became the purchaser of the land.    The defendant, Kelly, is therefore practically out of the case, and the only real defendant is Allen.

Thus it appears that this controversy is between the

plaintiffs who purchased the land at the sheriff's sale, on the 19th of July, 1895, under the Martin judgment against Ensor, and the defendant, Allen, who purchased the land, after this suit was brought, at the foreclosure sale on October 22, 1895, under the deed of trust made by Witten, on January 22, 1892, to Burnes, trustee for Brockett, and which deed of trust Allen had acquired from Ensor on October 4, 1894.

The circuit court made a special finding of the facts, finding *inter alia*, that the deed from Heren to Witten, the deed of trust from Witten to Burnes, trustee for Brockett, and the deed of the equity of redemption from Witten to Mrs. Ensor, were made with intent to hinder, delay and defraud the creditors of Ensor, and hence were fraudulent and void; that Ensor was insolvent at all times stated, and that Allen (Ensor's partner in the abstract business) had full knowledge of the intent and fraud and actively participated therein, as he also had and did in respect to the several transfers of said property. It should also be stated that Allen claims that the two thousand dollars he gave to Ensor for the note and deed of trust was trust funds in his hands as guardian and curator of the Terhune heirs, but this is not a material consideration in this case, and if it was there is room to doubt the claim, as Allen's settlements as such guardian and curator do not show that those trust funds were so invested.

Boiled down, therefore, the case is this: Allen's title is derived from the Witten deed of trust, dated January 22, 1892, and the plaintiffs' title is derived from the sheriff's sale, under the Martin judgment, on the 19th of July, 1895. The foreclosure of the Witten deed of trust did not take place until October 22, 1895, over three months after the sheriff's sale, but the title under the deed of trust relates back to the date thereof, to wit, January 22, 1892. If that deed of trust was valid, and if Allen was an innocent purchaser thereof, and of the note it secured, for value and without notice, then Allen has a better title to the land than the plaintiffs have. But if,

as the petition charges, and as the court below found the fact to be, that deed of trust was made to hinder, delay and defraud Ensor's creditors, and was a part of the same scheme by which the title to the property was placed, first in Heren, and, second, in Witten, and if Allen had knowledge of the purpose and fraud, then the plaintiffs have the better title and the deed of trust should be canceled, and the title made clear in the plaintiffs.

The judgment in favor of Mrs. Martin and against Ensor and Heren conclusively establishes, so far as this case is concerned, that the conveyance from Lydia L. Baker to Heren was a fraud upon Mrs. Martin's rights, concocted and carried out by Heren, Ensor and Martha A. Baker.

The record leaves no room for doubt that the deed from Heren to Witten and the deed of trust and two thousand dollar note secured thereby made by Witten to Burnes, trustee for Brockett, was a scheme to so place the property that Ensor could get the benefit of it and to put it out of the reach of his creditors. Neither is there any room for doubt that Allen, Ensor's partner, knew all about the transactions; heard the talk about procuring the conveyance from Lydia L. Baker to Martha A. Baker, and from Lydia L. Baker to Heren, and as notary public took the acknowledgment to the quitclaim deed from Heren to Witten. Nor is there the least doubt that Witten was not a *bona fide* purchaser from Heren, for he received from Ensor the sum of ten dollars for taking the deed from Heren, making the note and mortgage and conveying the equity of redemption to Mrs. Ensor.

It is claimed by defendant Allen, however, that the note and deed of trust are not fraudulent and did not hinder, delay or defraud Ensor's creditors, because, notwithstanding they were never delivered to Brockett and he never knew anything about them, but they were delivered to Ensor, yet that Ensor used them as collateral security for a loan of two thousand dollars secured by him from the National Bank of St. Joseph,

and applied the proceeds of the loan to the payment of what he owed on a stock of goods, and thereby afforded his creditors a recourse against the stock of goods. This may all be conceded and yet it does not help Allen. In the hands of the bank the deed of trust and note may be regarded as *bona fide*, but Allen did not acquire title thereto from the bank, and hence he can not stand in the shoes of the bank and defend upon the *bona fides* of the bank's title. Neither can Allen claim any consideration because Ensor used the money obtained from the bank to pay what he owed on the stock of goods, for there is no privity between Allen and that transaction, nor is the validity of Allen's title to the note or deed of trust in any manner affected by that transaction. The record does not disclose what became of the stock of goods. So that matter is wholly immaterial here. In some manner, not explained by the record, Ensor regained possession of the note and deed of trust, and more than eight months after the note became due, Ensor negotiated it to Allen, from whom he received a check on the State Bank of Savannah for two thousand dollars, which was payable to W. Aaron Kohl or bearer, and which Ensor used, without Kohl ever knowing anything about it, to pay seventeen or eighteen hundred dollars which Ensor owed that bank, and for which Allen was security, and the balance was placed, by the bank, to Ensor's credit. The validity of Allen's title depends upon the status he occupies by reason of purchasing the note from Ensor after the maturity of the note.

The circuit court found that Allen had actual notice of Ensor's fraud upon his creditors, and the evidence warrants that finding, but as Allen took the note after its maturity he took it subject to any defense that could have been made to it if it had remained in the hands of Ensor, notwithstanding he, Allen, may have paid full value for it. [Kellogg v. Schnaake, 56 Mo. 136; Julian v. Calkins, 85 Mo. 202; Ford v. Phillips, 83 Mo. 523; Turner v. Hoyle, 95 Mo. 337.] And any equities that could have been asserted against the note

in Ensor's hands are equally available against it in Allen's hands.   [Gullett v. Hoy, 15 Mo. 399; Chappell v. Allen, 38 Mo. 213; Turner v. Hoyle, 95 Mo. 337; Dausman v. Maguire, 61 Mo. App. 51; McCorkle v. Miller, 64 Mo. App. 153.]   .

Allen therefore not only had actual knowledge but he is also charged in law with notice of any infirmity in the note and deed of trust, and can not claim any title except such as Ensor could maintain.

It is clear that the conveyance from Lydia Baker to Heren for the benefit of himself and Ensor was so arranged in order to cover up Ensor's interest so that his creditors could not reach it.   It is also manifest that the voluntary conveyance from Heren to Witten and the execution by Witten of the note and deed of trust to Brockett or bearer without Brockett's knowledge or participation, and the delivery of the same to Ensor, and the subsequent conveyance of the equity of redemption by Witten to Mrs. Ensor, and afterwards, her conveyance thereof to Todd, was a mere scheme to cover up Ensor's interest in the property so his creditors could not reach it, or at any rate would have difficulty in doing so, and at the same time to fix it so Ensor could not get the benefit of it.   It was not only so intended but it actually accomplished the purpose and would have effectuated it but for this suit.   It had the effect of deterring Mrs. Martin from proceeding directly, in equity, against the land, because she was not advised of the infirmity of the Brockett deed of trust but believed the property had, in this way, passed beyond the reach of a direct attack, and so forced her to sue Ensor and Heren individually, notwithstanding Ensor was insolvent, as the trial court properly found, and to take the chances of realizing on execution against Ensor.

It is equally plain that Ensor's purpose in not taking the title in his own name, and in not taking the Witten note and deed of trust in his own name, but in having the note payable to Brockett or bearer, without Brockett's knowledge or consent or participation, and in having the check from Allen made

payable to W. Aaron Kohl or bearer, instead of to himself, without Kohl's knowledge, consent or participation, was all for the purpose of enabling Ensor to use and enjoy the property and to hinder, delay and defraud his creditors in the collection of their claims against him. Such acts are wholly inconsistent with any other theory. The conclusion is also irresistable that Mrs. Martin was especially the person whom Ensor intended to hinder, delay and defraud, for he knew Mrs. Martin would be, otherwise, entitled to one-half of her mother's interest in the whole three hundred and ninety acres, and that Mrs. Martin was contending that her mother had been induced to convey the two hundred and seventy acres to her sister Martha A. Baker, through the fraud, deceit and undue influence of her sister and of Ensor; and he knew that Mrs. Martin was of the same mind as to the conveyance from her mother to Heren; and he knew Mrs. Martin would bring suit to recover her interest in this deed, for he told Witten so, and by this means procured him to convey the equity of redemption to Mrs. Ensor.

If, therefore, Ensor was the party defendant, all these equities could be asserted by the plaintiffs, the legal successors to the rights of Mrs. Martin, and Allen is in the same position and in no better one, as Ensor would be in if he was the defendant.

The conclusion of the circuit court that it was all a scheme of Ensor's to defraud, hinder and delay his creditors, particularly Mrs. Martin, was not only right but was the only conclusion that the evidence and the law warranted, and the cancellation of the deed from Heren to Witten, the deed of trust from Witten to Brockett under which Allen claims title, and the deeds from Witten to Mrs. Ensor and from Mrs. Ensor to Todd, and the decree vesting the title in the plaintiffs followed as a necessary result.

Defendant claims, however, that the court erred in overruling his motion to strike out the reply on the ground that it

was a departure from the petition.    There was nothing in the reply which could not have been adduced in evidence equally as well under the allegations of the petition, as it was amended by direction of the court so as to charge express actual notice of Ensor's fraud upon Allen, and hence the reply was in no sense a departure from the petition.    In fact the reply only pleads the evidence by which the plaintiff expected to sustain the charges of fraud in the petition, and thereby gave defendant information of what evidence the plaintiff intended to rely on, and this was an advantage and not an injury to defendant.

This conclusion renders it unnecessary to consider the other points relied on by the plaintiffs as to the execution and delivery of the note and deed of trust, for the judgment of the circuit court was right, even upon the theory that the note and mortgage were executed and delivered in legal form.

The judgment of the circuit court is therefore affirmed. All concur.